## No. 13,643.

STATE EX REL. CHARLES C. COTTING VS. HON. WALTER B. SOMMERVILLE, JUDGE CIVIL DISTRICT COURT, PARISH OF ORLEANS.

### SYLLABUS.

1. An injunction enjoining a person from taking possession of another's property, prior to payment under expropriation proceedings, should not be dissolved on bond. Private property cannot be taken for public purposes without just and adequate compensation being first paid. (Constitution 1898, Article 167.)

   The owner's right of retention of his property being guaranteed by the Constitution, the invasion of that right is *per se* an irreparable injury.

2. An order dissolving an injunction on bond may work an irreparable injury and is appealable suspensively when the act, as alleged, amounts to a trespass; and the effect of dissolving the injuction would be to change the possession of immovable property. (State ex rel Sigur vs. Judge, 33 Annual, 133.)

3. Usurpations and wrongs to rights of private property cannot be justified by considerations of benefit to commerce, and the right of expropriation of private property can only be exercised according to the forms of the law. (Bruning vs. New Orleans Canal and Banking Co., 12 Annual, 541 ; Dudley vs. Tilton, 14th Annual, 286 ; Kirk vs. Kansas City, Shreveport & Gulf Railway Co., 51st Annual, 682.)

4. A deposit in money in the hands of the sheriff subject to the order of the owner of property sought to be expropriated does not authorize the plaintiff in expropriation proceedings to take possession of the property, prior to the verdict of the jury and the judgment of the court therein, even though the amount of the deposit may be largely in excess of the value of the property.

5. A district judge who has refused to grant a suspensive appeal from his order illegally dissolving, under Article 307 of the Code of Practice, an

injunction on bond should be ordered by *mandamus* to grant such an appeal. A plaintiff who has obtained an injunction restraining a person from taking possession of his property in expropriation proceedings prior to payment does not lose the right to have such an order issued for the reason that since the application for a *mandamus* the property has been expropriated by judgment and that under the judgment, plaintiff in the expropriation proceedings has made a deposit in the hands of the sheriff under Article 2634 of the Civil Code.

ON Application for *Mandamus* and, in the Alternative, for *Certiorari*.

*Benjamin Rice Forman* for Relator.

Respondent Judge *pro se*.

The opinion of the court was delivered by

NICHOLLS, C. J. In relator's petition to this court he alleges that since the 19th of December, 1894, up to about the 10th of September, 1900, he was in the quiet, peaceable and undisturbed possession as owner, having been in possession as universal legatee and instituted heir of all the property left by Mrs. Julia Roe, widow of John Green, by judgment of the Civil District Court of the 14th December, 1894, and among said property that which he described in his petition; that on or about the 10th of September, 1900, the Illinois Central Railroad Company, claiming to be the lessee or assignee of the Chicago, St. Louis and New Orleans Railroad Company, was about to throw or had thrown earth and trespassed on relator's said property, by putting earth thereon, and was about to lay ties and rails and thus take possession of his property, in violation of his constitutional right, protecting him in his right of property, and especially of the article of the State Constitution which prohibits the taking of property for public purposes, without compensation previously paid, and in violation of the Constitution of the United States, 14th Amendment, which prohibits the taking of property without due process of law; and although the city ordinance providing for the opening of the street along the river front was passed and promulgated about the 1st of March, yet no expropriation proceedings had been taken to expropriate relator's property, of which he was in possession as owner; that the said railroad companies were further threatening to trespass upon relator's property, by laying ties and rails thereon, when, on the 10th of Sep-

tember, 1900, he applied to the Civil District Court for the Parish of Orleans for a writ of injunction enjoining the said two railroad companies, their servants and agents, from entering upon or trespassing upon or taking relator's said property without previously paying to him adequate compensation, and until the amount of said compensation should be ascertained in the mode pointed out by law, in expropriation proceedings, by a jury of freeholders, which injunction was duly issued and served to protect relator in his said constitutional right of property; that on or about the 11th of September, 1900, by an *ex parte* order, and without evidence (and not upon a rule to show cause), the Honorable Walter B. Sommerville, judge of the said Civil District Court, did dissolve and set aside the said injunction on the said railroad companies giving bond in the sum of fifty-two hundred dollars; that said order was illegal and in contravention of the Constitution which prohibits the taking of private property for public use, without previous compensation being made, and illegal because it permits the taking of private property without due process of law, and said judgment should not have been set aside by any *ex parte* order; that on the 19th of September, 1900, he applied to the Honorable Walter B. Sommerville for an order for a suspensive appeal from said order of the 11th of September, and asked the court to fix the return day and the amount of bond, inasmuch as relator had given a bond deemed adequate to cover the damages that might accrue in case his own injunction was unlawfully obtained; that he was entitled to a suspensive appeal from said order or judgment dissolving his injunction, upon giving bond for costs of court; that the said judge refused to grant an appeal and to fix the amount of the bond or the return day; and the said *ex parte* order of the 11th of September dissolving the injunction and permitting the railroad companies to take possession of his property, without compensation previously paid, was in violation of his said constitutional rights, and would have the effect of making the article of the Code of Practice, authorizing, in certain cases, the setting aside of an injunction upon the giving of bond, abrogate and do away with the higher law, to-wit: the Constitution of the State and of the United States, the one prohibiting the taking of private property without compensation previously made, and the other prohibiting the taking of property without due process of law.

In view of the premises, relator prays that an alternative writ of *mandamus* issue, directed to the said judge, commanding him to allow

an appeal, and fix the return day and the amount of the appeal bond in the amount of the probable costs, and that after due proceedings the writ of *mandamus* be made peremptory, and, in the alternative, relator prays, should the court be of the opinion that an appeal was not the proper remedy, but that the relator should have relief against the illegal order which permits the taking of his property, without previous compensation, that a writ of *certiorari* issue directing the judge to send up the record, with all the proceedings thereunder, in the suit entitled Charles C. Cotting vs. The Illinois Central Railroad Company and the Chicago, St. Louis and New Orleans Railroad Company, to the end that the validity of the said *ex parte* order of the 11th September, 1900, setting aside the injunction, on bond, should be inquired into and that it be decreed unlawful and set aside.

Upon the reading and consideration of the application, this court, on the 25th September, 1900, ordered the district judge to show cause why the *mandamus* sought should not issue as prayed for. In obedience to this order he answered that on February 28th, 1899, the City Council, in and for the Parish of Orleans, adopted Ordinance No. 15,080, C. S., which ordinance was approved March 1st, 1899, which would fully and at large appear by a copy of said ordinance annexed to the answer; that the object of said ordinance was the opening and widening of Water and Front streets, and that the Supreme Court, in the case of City of New Orleans vs. Steinhardt, 52 Ann. 1043, held that said ordinance was valid and that the city had the power and right to purchase or expropriate the land necessary to carry out the object and purposes of said ordinance; that soon after the decision in the case of City of New Orleans vs. Steinhardt, 52 Ann. 1043, became final, the City of New Orleans and the Illinois Central Railroad Company organized a large force of labor for the purpose of laying out and widening Water and Front streets, and to lay the track of said Illinois Central Railroad Company on said street when thus laid out and widened as provided for in said ordinance; that when the property of relator, mentioned and described in petition herein, was reached, all of which property was and is vacant and necessary for the opening and widening of Front and Water streets, as provided for in said ordinance, relator insisted upon being paid an exorbitant value for his property, which the city declined to pay, and thereupon plaintiff applied for and obtained the writ of injunction, the effect of which was to retard and stop the work of public improvement necessary and essential to the

commerce of the port; that application having been made to dissolve said injunction, on bond, for the reason that the act complained of by the plaintiff was of such a nature as to be repaired or compensated in money, and respondent, therefore, had the discretion, under Article 307, C. P., to dissolve said injunction, on bond, the dissolution of the injunction not working plaintiff any irreparable injury, and respondent, upon examination, being of the same opinion, and with evidence before him showing that $2,100.00 had been deposited in the suit of City of New Orleans vs. Chas. C. Cotting, No. 63,062, Civil District Court, Parish of Orleans, the same being a suit to expropriate the land in question, and it appearing on the face of the papers that the property was vacant, and evidence being adduced that Cotting was anxious to sell, and the only difference between the parties being one of price, respondent ordered that said injunction be dissolved upon defendant executing bond in the sum of fifty-five hundred ($5,500) dollars, a sum far in excess of the value of the property as placed thereon by plaintiff; that in a similar case to the present, that of Gay vs. Pacific R. R. Co., 32 Ann. 277, it was held that where a corporation illegally entered upon land and constructed works thereon without previous expropriation, the owner, on a perpetuation of an injunction prohibiting the entry before expropriation, was only entitled to a monied judgment for the value of the property illegally taken; As the Supreme Court had determined in the case of City of New Orleans vs. Steinhardt, that the ordinance of the City of New Orleans, No. 15,080, providing for the opening and widening of Water street was valid, and that the city had the right to expropriate the necessary lands to carry out the purposes and objects of said ordinance, as the land of plaintiff which was vacant and unimproved was necessary to carry out the purposes expressed in said ordinance, and, as under the Gay decision, 32 Ann. 277, the only effect of the city entering upon said land before expropriating it would be for plaintiff to obtain a judgment for the value of said land upon his injunction being perpetuated, relator could suffer no possible injury from the dissolution of the injunction upon a bond, far in excess of the value of the property placed thereon by plaintiff himself (36 Ann. 772); That it was well settled that whenever the act prohibited by the injunction is not such as may work an irreparable injury to the plaintiff, the judge might, in his discretion, dissolve the same on bond, and that no appeal would lie from said interlocutory

decree permitting said injunction to be dissolved on bond. (C. P. Art. 307; 32 Ann. 1192; 45 Ann. 1493; 37 Ann. 826; 46 Ann. 83; 48 Ann. 1348; 50 Ann. 273.) That a failure to dissolve the injunction on bond would have retarded and prevented a work of public improvement essential to the commerce of the port; and, besides, it would have entailed inconveniences and serious loss to both the city and railroad company, if the labor organized to do this work disbanded (30 Ann. 971, 972); that application having been made to respondent in vacation for a suspensive appeal from the order dissolving said injunction on bond, respondent refused to allow same, as the order dissolving the injunction on bond did not work plaintiff an irreparable injury; that in 37 Ann. 825, it was held, "that a district judge who allows an injunction to be dissolved on bond, because the act complained of would not work an irreparable injury to the plaintiff, should consistently refuse a suspensive appeal from his dissolving order, as the latter only applies when the interlocutory decree would cause irreparable injury;" that in 32 Ann. 1196, the court said: "It is well settled by jurisprudence, in accordance with law and reason, that no appeal lies from an order dissolving an injunction on bond, by defendants, in compliance with Article 307, C. P., where the facts of the case show the dissolution can work no irreparable injury;" that in 37 Ann. 1193, it was held: "That as a general rule, no injury can be considered irreparable where the damage or loss caused by the act complained of can be made good or repaired by the payment of money. (See also 50 Ann. 273; 46 Ann. 83; 36 Ann. 772; 33 Ann. 493; 34 Ann. 1181, and 39 Ann. 902 to the same effect). That plaintiff has failed to allege any personal injury to flow from the dissolution of the injunction on bond, and it was, therefore, safe to conclude that he did not suffer irreparable injury from the interlocutory order dissolving his injunction on bond (37 Ann. 825); that the only judgment plaintiff could obtain in this case, under the Gay case, 32 Ann. 277, would be for the value of the property, as there could be no question, under the Steinhardt case, but that the city had the right to expropriate this property, and he was amply protected by the bond given to dissolve the injunction, as said bond was largely in excess of the value of the land as fixed by plaintiff, and by verdict of the jury; it follows, therefore, that the damage or loss caused by the act complained of by plaintiff could be compensated in money; that the injunction was of that class and nature that respondent had a right to

order same dissolved on bond and to refuse a suspensive appeal from the order permitting same; that the City of New Orleans, on the 7th day of September, 1900, instituted expropriation proceedings against plaintiff to expropriate the lands mentioned and described in plaintiff's petition, and that on the 26th and 27th of September, 1900, said expropriation proceedings were tried and the jury rendered a verdict authorizing and empowering the City of New Orleans to expropriate said lands upon the payment to relator of twenty-five hundred dollars, which sum had been deposited in the hands of the civil sheriff, in accordance with Article 2634, R. C. C.; all of which would more fully appear by the proceedings on file in the suit of City of New Orleans vs. Chas. C. Cotting, No. 63,062, Civil District Court for the Parish of Orleans, Division "D," which he annexed and made part of his answer, and also receipt of the civil sheriff for the Parish of Orleans, showing that amount of said verdict had been deposited in the hands of the sheriff; and that under the law and jurisprudence of the State, title to said property was now vested in the City of New Orleans and her agents could lawfully enter thereon and were at the time of the filing of the answer in possession thereof (R. C. C. Art. 2634); that plaintiff had no further interest in the lands referred to and no right to appeal from the order permitting the injunction to be dissolved on bond.

On the 5th of October, 1900, the district judge filed a supplemental answer or return in which, after reiterating the averments which he had previously made, he alleged that in accordance with the verdict of the jury rendered in the case of the City of New Orleans vs. Chas. C. Cotting, a judgment was rendered and signed, in open court, October 3, 1900, as would appear by a copy of the judgment which he annexed; that under the law of Louisiana, the verdict, the judgment, thereon, and the fact that the money fixed by the verdict was paid into the hands of the sheriff, subject to the orders of Charles C. Cotting, had operated a complete and absolute transfer of the property in question to the City of New Orleans, and the relator was without further interest to further prosecute any proceedings in the injunction suit, and any decision rendered by the Supreme Court would be simply the decision of a moot question, and that under the jurisprudence of the Supreme Court, in an unbroken line, it had always refused to decide moot questions where no real issues were involved.

In view of the premises, he prayed that the application for the writ of *mandamus* be refused.

On the 12th of October, 1900, relator filed in the Supreme Court a paper verified by his oath, in which he alleged that he had had no notice of the application on the part of the Illinois Central Railroad Company, or the other defendant, in the case of Charles C. Cotting against the said Illinois Central Railroad Company, of its intended motion of the 11th of September, 1900, to dissolve the injunction which he had obtained on bond; that he was not present and as he was informed and believed his counsel was not present and had no notice of the said application; that if it were true, of which affiant was entirely ignorant, "that the Illinois Central Railroad Company organized a large labor force for the purpose of laying out and widening Water and Front streets, and to lay the track for the said Illinois Central Railroad Company on the said street, when it was thus laid out and widened, as provided for in the said ordinance, then that was a matter of which he was ignorant; that he had no knowledge of any intention to introduce any such evidence before the Honorable Walter B. Sommerville, and he would have the legal right to contradict the said evidence and to show that his property was neither on Water nor Front street, and did not touch either of the said streets, of which he was deprived by the illegal *ex parte* order of the 11th of September, 1900, complained of in this proceeding; that he denied that he insisted upon being paid an exorbitant value for his property, which the city declined to pay; he averred that he had no dealings whatever with the city; that the city never applied to him to buy his property, or offered to pay him anything until the Illinois Central Railroad Company, acting in the expropriation proceedings hereinafter referred to, deposited twenty-five hundred dollars in the court; that if there was any evidence before the court when it rendered this *ex parte* order on the 11th September, 1900, complained of, allowing the Illinois Central Railroad Company to trespass upon his property without having previously paid him the value thereof, or damage that he would sustain, in violation of Article 167 of the Constitution, "he was not aware of the said evidence, was not present when it was offered, had no opportunity to cross-examine witnesses or to show that the property on which they were trespassing, and which they were attempting to take by force, was not the property provided for in the ordinance and on the lines and plans of the city engineer, authorized by the ordinance of the City of New Orleans;" that as to the issues in the case, of the City of New Orleans against

Steinhardt, they were totally different from the issues in the case of the City of New Orleans against him; that his property was not upon Water street and when the expropriation case of the City of New Orleans against him came up for trial it was long after the *ex parte* order of the 11th of September, 1900, which he complains of, and he insisted that the property sought to be expropriated was not the property included in the city ordinance and fixed by the lines of the city surveyor, an issue which was not raised in the case of Steinhardt; that relator's property was some two or three miles from the Steinhardt property and totally differently situated, and the judge of the Civil District Court, in trying the expropriation case, erroneously charged the jury that they had no concern with the question as to whether or not the property sought to be expropriated in that case was that authorized by the ordinance and by the lines of the city surveyor, and whether it was totally different property; and relator, through his counsel, duly excepted to the said charge, as well as excepted to the charge of the judge with reference to the method of fixing the value of the property and the damage done to relator by reason of the unlawful taking of his property; that if any evidence of the facts, stated in the judge's answer in this *mandamus* case, was offered on the 11th of September, 1900, or at any other time, before the Hon. Walter B. Sommerville, relator had no notice of the same, was not present and had no opportunity to cross-examine witnesses or disprove the facts alleged in the judge's answer, and it was not true that "relator could suffer no possible injury from the dissolution of the injunction upon bond" as stated by the judge; that "if there was any evidence before the Honorable Walter B. Sommerville that a failure to dissolve the injunction on bond would have retarded and prevented the work of great public improvement essential to the commerce of the port, and would have entailed inconvenience and serious loss to both the city and the said Railroad Company, if the labor organized to do this work was disbanded," relator had no notice of any intention to introduce evidence on the subject, and he denied the truth thereof; on the contrary, the Illinois Central Railroad Company, or the city, if it had any legal ground to expropriate the property of relator, could have commenced this expropriation suit some months ago, long before the courts adjourned, and had it finally decided; that it was illegal and improper, when he seeks to have reviewed and set aside an illegal order which permits the taking of his property, in violation of his con-

stitutional rights, without compensation being first paid, to set up matters and things which may or may not have occurred long after the illegal order complained of; that while it was true that in the expropriation suit, that of the City of New Orleans against him, tried before Judge King, on the 26th and 27th days of September, 1900, the Railroad Company did deposit twenty-one hundred dollars, and the jury did find the value of the property to be twenty-five hundred dollars, yet the said finding was illegal, because the judge instructed the jury that they had no concern as to whether the property sought to be expropriated was the same fixed in the lines and the plan of the city surveyor, that because the judge erroneously charged as to the manner in which the jury should arrive at their verdict, which was duly excepted to, relator has taken an appeal from the said judgment, and the said verdict of the jury; and the judgment of Judge King, rendered long after the order complained of herein, was not proper to be considered in this proceeding; that relator denied all of the material allegations of fact (except those expressly admitted) in the answer of the said judge, and he prayed either that the *mandamus* be made peremptory, compelling him to grant a suspensive appeal, or, in the alternative, that a writ of *certiorari* issue, commanding him to send up the record in the case of Chas. C. Cotting vs. The Illinois Central Railroad Company and others, and that his order aforesaid, on the 11th of September, 1900, be set aside as null and void and in violation of relator's constitutional rights; and he further prayed that the Supreme Court would send to the clerk of the Civil District Court the papers in the case of the City of New Orleans vs. Chas. C. Cotting, in order that a transcript of appeal may be made and filed on the return day, to-wit: On the 23rd of October, and that it may consider the legality of the said expropriation proceedings before determining upon the said appeal.

Accompanying this paper was an affidavit of B. R. Forman, relator's attorney, in which he declared that he had no notice of the application of the Illinois Central Railroad Company dissolving the injunction on bond; that he was not present and had no opportunity to examine the witnesses, or contradict or disprove the facts Judge Sommerville, in his answer, sets up; that if such facts were before the judge, in his opinion, they were before him illegally, and he could take no cognizance of them without an opportunity on the part of Cotting and his counsel to cross-examine the witnesses and to offer rebutting testimony, and, therefore, that the legal effect of the order of Judge Sommerville, dissolv-

ing. the injunction on bond, was to permit the Illinois Central Railroad Company to take violent and forcible possession of the property of Charles C. Cotting, without previously paying therefor, and in accordanc with Article 167 of the Constitution, and was a taking of private property without due process of law.

## OPINION.

The only question before us on this application is whether the relator was entitled to a suspensive appeal from the action of the district judge dissolving on bond the injunction which had been issued in his favor.

The authority of a district judge to dissolve on bond an injunction which he has granted to a party applying for the same is derived from Article 307 of the Code of Practice, which declares that, "whenever the act prohibited by the injunction is not an irreparable injury to the plaintiff, the court may, in their discretion, dissolve the same provided the defendant execute his obligation in favor of the plaintiff, with the surety of one good and solvent surety residing within the jurisdiction of the court, for such sum as the court may determine according to the nature of the case, as security that he will deliver the property in dispute in the same state in which it was at the moment of issuing the injunction, and that he will pay besides to the plaintiff all damages he may have sustained by his act, if a definitive judgment be rendered against him in the suit pending."

The district judge is entitled to decide, primarily, whether an act prohibited by an injunction is one which may work an irreparable injury to the plaintiff, and when he has exercised the right so vested in him in favor of the right of the defendant to have the same dissolved on bond, it is not surprising that he should decline to grant a suspensive appeal from his decision on that subject. The discretion vested in him of passing upon the character of the injury which might result to the plaintiff from a dissolution of the injunction, is subject to be reviewed, as to its correct exercise, by the Supreme Court, and where this right of review, claimed by the plaintiff to be open to him through a suspensive appeal, is denied by the judge, the issue so raised is properly referred to this court under an application for a writ of *mandamus* to the inferior judge.

The District Court contends, in the present instance, that his refusal of a suspensive appeal was an interlocutory order, working no injury, for the reason that the act prohibited by the injunction was itself an act working no injury. He maintained that, by the decision of this court, in the case of The City of New Orleans vs. Steinhardt, 52 Ann. 1044, it was adjudged that the ordinance of the City of New Orleans, providing for the opening and widening of Water street, was valid, and that the city had the right to expropriate the necessary lands to carry out the purposes expressed in said ordinance; that the only effect of the plaintiff entering upon relator's land, before expropriating it, would be for plaintiff to obtain a judgment for the value of his land upon his injunction being perpetuated, and he could suffer no possible injury from the dissolution of the injunction upon a bond far in excess of the value of the property placed thereon by himself.

It is true that the right of the city to expropriate property, under the ordinance referred to, for the purposes therein stated, and its right to expropriate the property of the defendant in that particular case, was affirmed in the case cited as against the objections urged by that defendant, but the scope and effect of that judgment is not as sweeping and radical as is urged for them. Questions as to the application of this recognized right of eminent domain to the particular property belonging to the relator, and the terms, conditions and circumstances under which its title and possession should pass from its owner, were matters left open by the decree in the case cited. These were left to be determined in the special proceedings which would be directed against relator and his property on the special issues which would be raised therein.

Granting that in point of fact and law the property was properly subject to expropriation for the purposes stated and on the lines claimed by the parties desiring expropriation, and that proceedings instituted for that object would result in a judgment for money, easy to be gauged as to value, it by no means followed, from these facts, that possession of the property should be taken from its owner prior to payment for the same under the verdict of a jury.

The Constitution of this State declares, in Article 167, that "private property shall not be taken nor damaged for public purposes without just and adequate compensation being first paid." The retention of one's property, even in expropriation proceedings, until just and ade-

quate compensation should be first paid, is a right secured by express constitutional provision, and there is no legal justification for an order of court which would authorize the invasion of this right by permitting the possession of the property to be changed, pending the litigation, by giving of a bond to the owner.

There is no basis whatever for a contrary contention in the proposition that the bond furnished would fully and amply protect the owner from ultimate loss, and, therefore, no irreparable injury to him would accrue. A court is bound to assume that the deprivation of a right secured to a person by constitutional guarantee works him *per se* an irreparable injury.

How can a court order or permit an act to be done which the Constitution declares shall not be done? If relator's allegations be true, a tort and a trespass has been committed.

A court cannot authorize the continuance of such an act by and through the giving of a bond.

It has been repeatedly held by this court, independent of any question of constitutional right, that an order dissolving on bond may work an irreparable injury, and is appealable when the act, as alleged, amounts to a trespass, and the effect of dissolving the injunction would be to change the possession of immovable property. ((33 Ann. 133, State *ex rel.* Sigur vs. Judge; Ruckette vs. Hicks, Judge, 39 Ann. 901; State *ex rel.* Hake vs. Judge, 52 Ann. 105.)

The District Court states that at the time that he ordered the dissolution of the injunction on bond, proceedings had been instituted to expropriate this property in the suit of the City of New Orleans vs. Charles C. Cotting, and he made the order, with evidence before him that $2,100 had been deposited in that suit by the city. How, and under what circumstances, the District Court came to receive this evidence is not shown, but the order to dissolve was made *ex parte*.

The court evidently considered this deposit of money made by the city equivalent to the prior payment of the price required by the Constitution as a condition precedent to the shifting of the title and possession of the property, but we are of opinion that this view of the situation was erroneous.

It is true that Article 2634 of the Civil Code authorizes the execution of a judgment for the expropriation of particular property, either by the payment of money or the deposit thereof, subject to the owner's order in the hands of the sheriff, but this payment is not of money

fixed as to an amount by the party plaintiff, or by the court, but fixed by the verdict of the jury. The law contemplates a payment or a deposit made after a trial and a verdict. The court assigns as a further reason for its action that a failure to dissolve the injunction on bond would have retarded and prevented a work of public improvement, essential to the commerce of the port, and besides it would have entailed inconvenience and loss to both the city and railroad company, if the labor organized to do this work had disbanded. In support of his position, the judge cites the decision of this court in the Jefferson and Lake Pontchartrain Railroad Company vs. the City of New Orleans, 30 Ann. 971, and that in Gay vs. Pacific Railroad Company, 32 Ann. 277.

Referring to the latter case, he says it was therein held that where a corporation illegally entered upon land and constructed works thereon, without previous expropriation, the owner, on a perpetuation of an injunction prohibiting the entry before expropriation, was only entitled to a monied judgment for the value of the property illegally taken. An examination of this decision does not sustain the view taken of it, nor the action of the court predicated upon it. So far from justifying the entry of the railroad company upon plaintiff's property prior to payment to the owner, the Supreme Court reinstated the injunction which the latter had taken out and which the District Court had dissolved.

The court did, in the matter of the Jefferson and Lake Pontchartrain Railroad Company (30 Ann. 971), sustain the District Court in dissolving on bond the injunction which the plaintiff had caused to be issued "restraining the city from using and maintaining on land belonging to it, a canal running from Northline street to the lake, and from draining into said canal, and over said property, and from entering upon his land and from trespassing thereon, and from preventing the plaintiff damming said canal, so as to prevent the city's draining therein," but the judgment of the court was based upon the special state of facts disclosed by the evidence taken in that case, which brought prominently into it, as factors affecting the decision, the doctrines of estoppel, waiver and acquiescence, doctrines which play no part in the case now before this court.

Other cases might be cited where the owner of property, having stood by and permitted works of a public character to be entirely

constructed thereon before opposition thereto, or having raised objections to the same only at the last moment, just before their completion, the courts have refused to prevent their continuance through an injunction, to order the removal of the works, and have confined the relief granted to the owner to just and adequate compensation, then or thereafter to be made to him; but decisions to that effect furnish no precedent for not affording to an owner who invokes, in proper time for his protection, the remedies of the law, full relief from an illegal entry upon his property under an alleged right to the possession thereof and prior to payment to him therefor, under the exercise of the right of eminent domain.

If relator was entitled, under the constitution, to retain possession of his property during expropriation proceedings instituted under the right of eminent domain until just and adequate compensation should be first made to him, that right could not be defeated by mere consideration of public convenience. In Bruning vs. New Orleans Canal and Banking Company, 12 Ann. 541 (repeated in Dudley vs. Tilton, 14 Ann. 286, and Kirk vs. Kansas City, Shreveport and Gulf Railway Company, 51 Ann. 682), it was held that "usurpations and wrongs to private rights of property cannot be justified by any considerations of benefits to commerce, and the right of expropriation of private property can only be exercised according to the forms of law."

The district judge urges that we should not grant the present application, for the reason that since his refusal of an appeal the suit of the City of New Orleans vs. Charles C. Cotting, Relator, has gone to judgment; this particular property has been legally expropriated and the amount fixed by the jury as being a just and adequate compensation for the same has been deposited in the hands of the sheriff, subject to the present relator's order; that under such circumstances the city was authorized to take possession of the property.

He contends that if the injunction which has issued at relator's instance should be reinstated, it could not be presently executed, in view of the fact that the city would be now found in legal possession; that the injunction was sought as a preventive remedy, and it would be futile to reinstate a preventive injunction as against accomplished facts; that to pass upon the issues raised would be to pass upon merely abstract moot questions. The case before us differs in some respects from those where courts have refused to grant a *mandamus,* in view of

the fact that the writ would accomplish nothing by its issuing, in that the object sought to be ultimately obtained herein, is not the "doing" of an act which can no longer be done, but the undoing of an affirmative act taken by the court in the course of a litigation which is still undisposed of, which it may be to the interest of the parties to the litigation to have set aside to the ascertainment and fixing of their exact rights and obligations.

The original injunction, with the questions raised thereby, has not abated by the fact that subsequent thereto expropriation proceedings touching this particular property have been brought to an end, and that under the same the city may have taken possession of the same. The issues raised were as to the rights and obligations of parties as arising from an alleged unauthorized and illegal taking possession of the property, prior to the expropriation.

We think a writ of *mandamus* should issue, as prayed for, leaving to be hereafter determined what shall be the result of the suspensive appeal herein ordered to be granted.

For the reasons assigned, it is hereby ordered, adjudged and decreed that a writ of *mandamus* issue, as prayed for herein, commanding Walter B. Summerville, judge of the Civil District Court for the Parish of Orleans, Division D, to grant the relator a suspensive appeal to this court from the order or decree rendered by him on the 11th of September, 1900, dissolving on bond injunction issued at the instance of the relator Charles C. Cotting, on September 10th, 1900, in the matter entitled Charles C. Cotting vs. The Illinois Central Railroad Company and the Chicago, St. Louis and New Orleans Railroad Companies, and that the costs of this proceeding be paid *in solido* by the Illinois Central Railroad Company and the Chicago, St. Louis and New Orleans Railroad Companies.