92 So.2d 98 (1957)
Dr. Donald B. WILLIAMS, Plaintiff-Appellee,
v.
The DEPARTMENT OF HIGHWAYS of the State of Louisiana, Defendant-Appellant.
No. 4332.
Court of Appeal of Louisiana, First Circuit.
January 2, 1957.
Rehearing Denied February 4, 1957.
*100 W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Baton Rouge, for appellant.
LeBlanc & Summers, Abbeville, for appellee.
TATE, Judge.
This suit seeks to enjoin the Department of Highways from continuing with certain construction upon plaintiff's land in connection with the improving of Louisiana Highway 339 in Lafayette Parish. The Department appeals from the injunction issued against it, and the landowner answered the appeal requesting that the injunction be broadened.
Along with 77 other landowners, plaintiff Dr. Williams had in May, 1955, executed a deed conveying to the Department a right of way "of a width not to exceed eighty (80') feet, measuring forty (40') feet in width on each side of the centerline of the existing roadway."
It is not denied that the eighty-foot right of way which the Department actually proposes to use for the new highway lies entirely east of the present right of way, and almost or entirely east of and outside the right of way described in the deed. East of the new highway, the Department also planned and started construction of a new cut, or drainage draw, approximately 40 feet in width, consuming another 40 feet off the western end of plaintiff's property; and it therefore constructed within a few days of the present suit a "right of way fence" approximately 120 feet within plaintiff's property, and approximately 150 feet from the center line of the existing roadwaybounding a strip some 110 feet deeper than the right of way deed calls for, and altogether approximately 600 feet in length.
Citing Raxsdale v. Highway Commission, La.App. 2 Cir., 1 So.2d 342, certiorari denied, appellant Department relies solely upon LSA-R.S. 48:219:
"After the department has laid out a highway over a certain tract of land and the work thereon has commenced without objection on the part of the landowner, the landowner may not prevent or retard the construction thereof by any legal process, but is limited to an action for damages."
Plaintiff landowner replies that the statute is unconstitutional; and alternatively, that he objected before operations commenced on his land.
The right of a citizen to have judicially determined the public need for his property and to receive payment for it (either personally or by deposit in the register of the court) before it is taken from him is one of his fundamental liberties and is guaranteed to him by Article 1, Section 2[1] and Section 6,[2] and by Article *101 4, Section 15,[3] of the Louisiana Constitution. LSA Article VI, Section 19.1, Louisiana Constitution authorizes the Legislature to provide for the taking of property for highway purposes by ex parte court order prior to final judgment in expropriation suits, "provided that provision be made for deposit before such taking" of the estimated value and damages. (Italics ours.)
Within the past several months, our Supreme Court has reaffirmed the constitutional right to receive compensation for private property before the public taking, holding void for this reason a police jury taking of private property for road purposes when payment was not tendered until sixteen days after the taking; and further holding that "notice and an opportunity to be heard and to defend in an orderly proceeding" are constitutional requisites to afford due process before such taking, Charles Tolmas, Inc., v. Police Jury, La., 90 So.2d 65, at page 68. See also: DeBouchel v. Louisiana Highway Commission, 172 La. 908, 135 So. 914; Bickham v. City of Shreveport, 156 La. 648, 101 So. 8.
Counsel for the Department has ably argued in brief and oral argument that the necessities of efficient highway construction and of avoiding undue expense by interruptions or relocations demand our sustaining the constitutionality of the Department's construction of the statute that a landowner's claim is relegated to damages and he is barred from enjoining construction, once a contract has been let and work has been started upon a given highway project. The sincerely claimed power of the State through the Highway Department to preclude a citizen's fundamental right to have the necessity for the public taking judicially determined and the court-ordered compensation paid or deposited before the taking, is repugnant to the cited provisions of our Constitution.
The Second Circuit Raxsdale case, cited by the Department, is not authority to the contrary, since the landowner did not appeal from the award to him of damages on his alternative demand, granted instead of an injunction; the remarks upon which appellant relies are by way of dicta, and were made without apparent consideration of the consitutional provisions and jurisprudence thereunder upon which we reply.
While, if required, the Department's construction of the statutory provision would render it unconstitutional, in our opinion; in accordance with the presumption of constitutionality of legislative enactments, a statute will be sustained when a constitutional construction can be given it, as over an unconstitutional construction urged. Meyer v. Board, 199 La. 633, 6 So.2d 713; Parker v. Board, La.App. 1 Cir., 84 So.2d 80. Insofar as it might apply to a situation where the landowner stands by without objection or protest, permitting the State to commence substantially work on his tract, the statute may probably be sustained on a theory of estoppel or implied consent. See Carroll v. Louisiana Highway Commission, 177 La. 865, 149 So. 503, where the landowner did not seek to enjoin the State from proceeding with construction until approximately two years after the preparatory work of constructing the road-bed had been completed.
But this is not the situation with which we are here faced. Dr. Williams, the landowner, signed the right of way deed in May, 1955. In due course, the contract *102 was let in January, 1956. Approximately the last week of February, 1956, Dr. Williams came by his place and saw workmen driving test pilings for a new bridge about 200 feet north of his property. From the location of this bridge, and from conversations with the workmen there, according to his testimony, he realized for the first time that the new highway would deviate substantially from the old roadway, and claim far more land for the right of way than he had conveyed. It is confirmed by the Department District Engineer that Dr. Williams saw him at once, before further work was done, complaining that the construction plans together with new cut or drainage draw would encroach greatly upon his property and deny him highway access to the west end thereof. The Engineer forwarded on Dr. Williams' complaints and proposed changes to Department headquarters in Baton Rouge.
Nevertheless, heavy equipment was moved to the area on March 6, 1956, and excavation of a deep drainage cut about 35 feet wide at the top and 20 feet wide at the bottom was commenced at once. A right of way fence was erected 120 feet inside the western edge of plaintiff's property, and a bulldozer commenced leveling the land proposed to be utilized for the new highway roadbed, by knocking down knolls and spoil piles and filling in gulleys.[4] Approximately the day the dragline commenced operations, Dr. Williams learned of it, called the District Engineer and protested, came out with several people to the scene and requested the contractor's employees to desist. The suit was filed on March 13, 1956, and the hearing (by agreement of counsel consolidated for both the permanent and preliminary injunction) was held on March 19 and 20.
Dr. Williams objected as soon as he learned that the Department intended to use more of his land than he had conveyed for the right of way; and he objected as soon as operations commenced when the Department rejected his alternate suggestions, and he filed suit within 7 days thereof. We are unable to see how these actions waived his constitutional rights to a judicial ordering of the appropriation and to receive prior compensation, or by what inaction on his part he is estopped from asserting these rights. No act on his part led the Department to act to its detriment; he signed a right of way deed prepared by the Department, which explicitly was restricted to 40 feet on either side of the center line of the existing road; which was sufficient for 75 of the 78 landowners affected, although insufficient as to plaintiff since the Department's plans called for relocation of the right of way approximately 80 feet further east into plaintiff's land in order to straighten out the old highway.
The voluminous testimony concerning whether Dr. Williams did or did not understand that the new highway was to follow its new course in May, 1955, when he signed the right of way deed,[5] indicates *103 the wisdom of the authors of our Civil Code in providing that parole evidence is not admissible to vary or add to the terms of a written instrument concerning immovables, Article 2276 LSA-Civil Code, save in case of fraud or error. See e. g., Smith v. Bell, 224 La. 1, 68 So.2d 737.
We think the District Court correctly restricted the Department of Highways to the terms of the right of way deed. The District Court enjoined the Department of Highways "from the continuation of any works, other than canals and drains, outside of the limits of the right of way, to wit: forty (40') feet from the center line of the existing road." (Italics ours.)
By answer to the appeal, the plaintiff landowner principally requests that the District Court's injunction be broadened so as also to prohibit the construction of canals and drains outside the right of way. However, the deed executed by plaintiff in May, 1955 specifically authorized the Department of Highways "to enter upon our properties beyond the limits of the aforesaid right of way and to excavate, construct and maintain thereon lateral drains and/or channel changes required for the proper and adequate drainage of the said highway and of the sizes and at locations designated by the District Engineer of the Department of Highways." (Italics ours.)
In accordance with this explicit authorization of the landowner, the Department was at the time of trial constructing a deep cut or drain, approximately 35 feet wide, with a 20 foot bottom, from 80-120 feet east of the old roadway. Although Dr. Williams testified that this was a far more substantial excavation than he had visualized at the time he executed the right of way agreement, he also testified honestly and frankly that this was not due to any misleading statements on the part of the Department's agent. We think the District Court correctly held the landowner bound by his plainly worded and unambiguous authorization.
The answer to the appeal further requests that the judgment should be amended ordering the Department to restore plaintiff's property to its original condition and to require it to provide the access to the public highway previously enjoyed. But the principal and only substantial work performed on plaintiff's property at the time of the trial was the construction of the drainage cut or channel, which we held is not subject to this injunction. The alleged denial of access occurs because of the construction of the cut in accordance with authorization given by plaintiff to the Department of Highways.
With regard to the proposed roadbed of the new highway, the sole work done at the time of the trial was to bulldoze it, clearing knolls and spoil piles, and filling gulleys; and it is impractical to order the Department to restore this strip to its previous condition. Insofar as plaintiff is damaged by this action, and insofar as he may have been damaged by any excessive taking for drainage purposes or by the denial of any access to the public highway previously enjoyed by him, we feel that the District Court's reservation to him of any rights he may have to recover damages offers him adequate protection.
For the above and foregoing reasons, the judgment of the District Court herein is affirmed.
Affirmed.
NOTES
[1] Article 1, Section 2: "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or lamaged except for public purposes and after just and adequate compensation is paid." (Italics ours.)
[2] Article 1, Section 6: "All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay."
[3] Article 4, Section 15: "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." (Italic ours.)
[4] Whether the sudden move onto plaintiff's land, in the middle of the highway stretch without having completed the sections of the highway on either side thereof, working even on Sundays, was (as plaintiff charges) a rather high handed attempt by the Highway Department to forestall plaintiff's defense in Court against this taking; or, on the other hand (as the Department claims), was dictated by the engineering necessity of completing the most difficult portion of the project first, namely straightening out the highway, building a new bridge, and relocating the drainage channels; is immaterial in the consideration of the legal principles involved.
[5] And although the State's right of way agent Himel testified with probably sincerity that he had explained the change to the Doctor, the Doctor testified with equal sincerity that such had not been done; indicating not even necessarily that either were mistaken, but perhaps simply that the jargon of the right of way man pointing to a map full of lines simply had been as misunderstood by the concededly very busy medical practitioner, as would have been the latter's discourse to the highway man of some new surgical method to repair the medial meniscus. In any event, Dr. Williams' prompt complaints upon perceiving from the test pilings driven for the new bridge that the new highway would encroach substantially more upon his land than the old highway, strongly corroborate his testimony that until that time, he had not understood any such explanation of the proposed new route and drainage project.