159 So.2d 144

STATE of Louisiana, Through the SABINE RIVER AUTHORITY, State of Louisiana

v.

William B. PHARES et al.

No. 46944.

Nov. 26, 1963.

Dissenting Opinion Dec. 3, 1963.

Rehearing Denied Jan. 20, 1964.

Jack P. F. Gremillion, Atty. Gen., W. R. Jackson, Jr., Leesville, for plaintiff-appellant.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, J. Reuel Boone, Many, Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., Charles M. Lanier, Emero S. Stiegman, New Orleans, Fred G. Benton, Sr., Benton & Moseley, Baton Rouge, amicus curiae.

Jack L. Simms, Leesville, A. B. Cavanaugh of Cavanaugh, Hickman, Brame & Holt, Lake Charles, for defendants-appellees.

SUMMERS, Justice.

Appellant, Sabine River Authority, State of Louisiana, brought this proceeding in conformity with Title 19, Section 1 et seq., and more particularly Sections 141–160 of the Revised Statutes of 1950, as amended, LSA, to expropriate appellees' land for use in the dam site of the Toledo Bend Dam and Reservoir Project on the Sabine River. Appellees filed a peremptory exception and plea in bar asserting that Sections 141 through 148 of Title 19 of the Revised

Statutes of 1950, as amended, LSA, are unconstitutional, null and void, principally because that legislation authorizes the taking of private property by ex parte order and prior to the payment of just and adequate compensation.

The district court declared LSA–R.S. 19:141 through 19:160 to be unconstitutional insofar as those sections purport to vest ex parte eminent domain powers in the Sabine River Authority.

By this appeal, appellant questions the correctness of the judgment of the district court.

The Sabine River Authority, State of Louisiana, was created by constitutional amendment in 1960 by the addition of Section 45 to Article XIV of the Louisiana Constitution, LSA. Under this enactment the Sabine River Authority was empowered to acquire land by expropriation, such power of eminent domain to be exercised "as provided for under general law." Thereafter, by Act 40 of 1962, the benefits of the right to expropriate by ex parte orders prior to judgment in the trial court, as set forth in LSA–R.S. 19:141–19:160, were made applicable to the Sabine River Authority. Previously, this legislation was only applicable to port commissions, port authorities, Louisiana State University, and the Department of Public Works.

By LSA–R.S. 19:141–19:160 it is provided that property may be acquired prior to judgment in the trial court by filing of a petition declaring that the taking is necessary, accompanied by a certificate declaring that the property is neither inadequate nor excessive for the purposes, and a statement of the amount of money estimated to be just and adequate compensation for the taking. These provisions are known as the "Declaration of Taking" or "quick taking" method of expropriation. Under this procedure the persons making the estimates are selected by the expropriating authority. The legislation further provides that upon deposit of the amount of the estimate in the registry of court, for the use and benefit of the persons entitled thereto, the clerk shall issue a receipt showing the amount deposited, the date it was deposited, the style and number of the cause, and the description of the property and property rights as contained in the petition. "Upon such deposits, title to the property and property rights specified in the petition shall vest in the plaintiff and the right to just and adequate compensation therefor shall vest in the persons entitled thereto."

"Upon receipt of the deposit, the clerk of court shall issue a notice to each defendant in the suit, notifying him that the property described in the petition has been expropriated for public purposes."

Provision is made entitling plaintiff to enter upon and take possession of the property upon the deposit of the estimated compensation.

It is also provided that defendant may thereafter apply for a trial to determine the market value or the just and adequate compensation to which he is entitled.

It is clear from the foregoing legislation that provision is made for the "taking" (transfer of title and possession) prior to the payment of just and adequate compensation for by the very terms of those sections (LSA–R.S. 19:141–19:160) the question of whether the compensation is "just and adequate" is left to future determination.

The constitutional provisions, which it is asserted prohibit legislation permitting the taking of private property for public use by an ex parte order without a hearing and before just and adequate compensation has been paid, are these:

Article I, Section 2:

"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."

Article I, Section 6:

"All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice adminis-

tered without denial, partiality or unreasonable delay."

Article IV, Section 15:

"No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid."

These fundamental propositions have long been embodied in the law of this State. LSA–Civ.Code, art. 497; Police Jury of Jefferson v. D'Hemecourt, 7 Rob. 509 (1844).

The requirement of payment in advance seems to be an attribute of the civil law, recognized in the Code Napoleon and adopted in some of the states in conformity with the concept embodied in the Civil Code of Louisiana. Nichols, The Law of Eminent Domain, § 8.713 (3rd ed. 1950); LSA–Civil Code, art. 497; Code Napoleon, art. 545; Planiol. Vol. 1, No. 2443.

Undoubtedly the people of Louisiana have found it advisable to adopt a special constitutional provision to prevent their legislature from authorizing the taking of land for public use without the prior payment of just and adequate compensation. We can conceive of many valid reasons which would justify this constitutional safeguard, such as the insolvency of an expropriating authority—a municipal, even a state government unable to meet its obligations—and

other evils that might ensue from a failure to provide for the payment of compensation prior to the taking. But we need not delve into the reason why. It is sufficient that the requirement is clearly set forth in the constitution.

In 1901, this court, interpreting a provision of the Constitution of 1898 similar to that contained in Article I, Section 2, of our present constitution, said:

> "The Constitution of this State declares, in Article 167, (of the Constitution of 1898), that 'private property shall not be taken nor damaged for public purposes without just and adequate compensation being first paid.' The retention of one's property, even in expropriation proceedings, until just and adequate compensation should be first paid, is a right secured by express constitutional provision, and there is no legal justification for an order of court which would authorize the invasion of this right by permitting the possession of the property to be changed, pending the litigation, by giving of a bond to the owner." State ex rel. Cotting v. Sommerville, 104 La. 74, 28 So. 977 (1901).

Thereafter this court declared that Article I, Section 2 of the Constitution of 1921 meant that property expropriated must be paid for in advance of the taking. Bickham v. City of Shreveport, 156 La. 648,

101 So. 8 (1924). This basic concept was reiterated in De Bouchel v. Louisiana Highway Commission, et al., 172 La. 908, 135 So. 914 (1931). The principle has been consistently followed since. State Through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); Charles Tolmas, Inc. v. Police Jury, 231 La. 1, 90 So.2d 65 (1956); Williams v. Department of Highways, 92 So.2d 98 (La.App.1957).

■ We are in accord with the interpretation contained in these cases for the words "after", used in Article I, Section 2, and "previously paid", as contained in Article IV, Section 15, of our constitution, are not meaningless, nor are we at liberty to say that they were inserted without design. The clear import of their meaning is that payment of just and adequate compensation must precede the taking in expropriation proceedings.

■ The conclusion, then, is that the legislature is powerless to enact any legislation that would permit a taking, either possession or title, from an owner until payment of just and adequate compensation has been made or at least tendered and deposited to the owner's account in the registry of court.

■ LSA–R.S. 19:141–19:160 do not satisfy the requirement of advance payment of just and adequate compensation in very important respects. First and foremost the

deposit of the estimate provided for in these sections, though a prerequisite to the transfer of title or the right to take possession, offends the constitutional due process requirements for the compensation is determined prior to notice to the property owner and without his being given an opportunity to be heard on that vital question. It, therefore, is not a payment of "just and adequate" compensation.

■ LSA–R.S. 19:141–19:160 are unlike that other enactment that authorizes the Department of Highways to take possession and title to property by ex parte orders prior to judgment. See LSA–R.S. 48:441–48:-460. In that instance the procedure is supported by a constitutional amendment (La.Const. art. VI, § 19.1) which creates an exception to the requirements of Article I, Sections 2 and 6, and Article IV, Section 15, of our constitution. Whereas, LSA–R.S. 19:141–19:160 are without constitutional support of any kind. These latter sections are, in fact, violative of Article I, Sections 2 and 6, and Article IV, Section 15, of our constitution.

Aside from these constitutional provisions which render the questioned legislation invalid, null and void, the very language of Article XIV, Section 45, of the constitution which created the Sabine River Authority, provides that it should exercise its power of eminent domain "as provided for under *general law*." (Emphasis supplied.)

■ The *general laws* of expropriation in this State are embodied in Title 19, Sections 1 through 14 of the Revised Statutes, LSA, LSA–Civil Code Articles 2626 through 2641 and the pertinent jurisprudence. The law which the legislature made applicable to the Sabine River Authority, and which it has invoked here, is special in character and therefore the use of it by Sabine River Authority transcends the scope of the constitutional limitations which require the Authority to expropriate under the general law. This is an additional reason why appellant could not avail itself of LSA–R.S. 19:141–19:160, even if those sections were not otherwise invalid under the constitution.

The judgment of the trial court is affirmed.

HAWTHORNE, Justice (dissenting).

It is my opinion that the statute here under consideration, R.S. 19:141–160, is not unconstitutional for any of the reasons given in the majority opinion. The statute does not violate Article 1, Section 2, or Article 4, Section 15, of the Louisiana Constitution, for it plainly requires the expropriating authority to make payment to the owner before possession of the property is taken. Section 145 of the statute provides:

"Upon the deposit of the amount of the estimate in the registry of the court, for the use and benefit of the persons entitled thereto, the clerk shall issue a receipt showing

the amount deposited, the date it was deposited, the style and number of the cause, and the description of the property and property rights as contained in the petition. Upon such deposits, title to the property and property rights specified in the petition shall vest in the plaintiff and the right to just and adequate compensation therefor shall vest in the persons entitled thereto."

The constitutional provision (Article 1, Section 2) requires that the landowner receive payment for his land before he is divested of title, and this is exactly what the statute provides shall be done.

Article 1, Section 2, of our state Constitution provides: " * * * private property shall not be taken * * * except for public purposes and *after just and adequate compensation* is paid." The Fifth Amendment to the Constitution of the United States requires: " * * * nor shall private property be taken for public use, *without just compensation*." (All italics ours.) The federal statute authorizing the government to condemn and expropriate property is U.S.C. 40:258a. It is clear that the Louisiana and the federal constitutional provisions are identical in meaning, and that the method of expropriation in our statute and in the federal statute is the same. In numerous cases the federal statute has been found not to violate the just compensation or due process provision of the United States Constitution. See United States v.

47.21 Acres of Land, D.C., 48 F.Supp. 73; United States v. 72 Acres of Land, D.C., 37 F.Supp. 297; Hessel v. A. Smith & Co., D.C., 15 F.Supp. 953; Travis v. United States, Ct.Cl., 287 F.2d 916, cert. den. 368 U.S. 824, 82 S.Ct. 42, 7 L.Ed.2d 28.

Moreover, I do not consider the cases of this court relied on in the majority opinion to be apposite or controlling here.