HAMITER, Justice.
This action by Union Producing Company and three other suits by United Gas Corporation, United Gas Pipeline Company and Esso Standard Oil Company (Numbered 43,609, 43,610, 43,611, respectively, on the docket of this court), 236 La. 1069, 1070, 1071, 110 So.2d 103, 103, 104 involve the identical legal issue and were consolidated in the district court for trial. All were instituted under the Louisiana Uniform Declaratory Judgment Act for the purpose of determining whether the foreign corporation plaintiffs could continue to do business in Louisiana without the payment of additional capital stock taxes under LRS 47:2611, as demanded by the defendant Secretary of State. This statute provides: “Every foreign corporation, before being authorized to do business in this state shall, as a condition thereto, pay into the state treasury a tax of one-twentieth (%o) of one per centum (1%) upon the amount of the capital stock of the corporation employed by it in this state, and a like tax on any subsequent increase thereof; provided, that no such tax on the *100 original capital or increases thereof shall be less than ten dollars, nor more than two thousand five hundred dollars.”
In each suit the trial judge ruled in favor of the defendant. Thereafter, plaintiffs appealed separately from the judgments, and the appeals were consolidated here for the purpose of argument and our consideration.
According to the pleadings, depositions and stipulations of fact (on which the cases were tried) each of the plaintiffs, in order to do business in the state, has paid a total capital stock tax of $2,500 to the Secretary of State. Final payments of such totals by the respective companies occurred as follows: Union Producing Company and United Gas Pipeline Company in 1938; and United Gas Corporation and Esso Standard Oil Company in 1946. Subsequently each company’s capital employed in Louisiana increased in some years; but, notwithstanding information received by him to that effect, the Secretary of State made no demand on any of the plaintiffs for additional tax payments until in 1954. In that year he demanded of United Gas Corporation, as well as of United Gas Pipeline Company, payment of an additional $2,500 tax on increases occurring during 1953 over the year 1952. Similarly, in 1954 an additional tax demand was made on Esso Standard Oil Company, except that it was for the sum of $1,236.69. Also demand was made on United Producing Company in 1955 for another $2,500 — a tax on its capital stock increase which occurred in 1954. This action and the other consolidated suits followed.
Initially, it is to be noticed that plaintiffs are not attacking the constitutionality or legality of the aforequoted tax statute (within the meaning of Article 7, Section 10 of the Louisiana Constitution). They complain only that the additional taxes demanded are unauthorized by the statutory provisions. Hence, the appellate jurisdiction of the four cases depends solely on the amount in dispute in each. State Farm Mutual Automobile Insurance Company v. Ott, 221 La. 1061, 61 So.2d 872 and Peters v. Cooper, 230 La. 173, 88 So.2d 16. This being true we are unable to entertain the appeal in the Esso Standard Oil Company case, the amount of the disputed tax therein not being in excess of $2,000; and we must transfer it to the Court of Appeal. Bascle v. Perez, 224 La. 1014, 71 So.2d 551.
As to the remaining three cases (each of which involves a disputed tax exceeding $2,000) we observe that both the plaintiffs and the defendant contend primarily that the statutory provisions under consideration (LRS 47:2611) are unambiguous. Yet each reaches a different conclusion as to the meaning thereof.
Plaintiffs urge that the statute clearly provides that once a foreign corporation has paid $2,500, either in an original payment or in subsequent smaller payments on capital increases, it is not thereafter accountable for any further tax. Their contention is, in other words, that there is one tax which is nothing more than an admittance charge which foreign corporations are required to pay in order to come into the state; and that when the maximum amount ($2,500) has been paid, either on the original capital or on later increases, nothing further is due.
The defendant Secretary of State, on the other hand, contends that the statute plainly contemplates that a foreign corporation must pay, on qualifying to do business in this state, a tax of one-twentieth of one per centum (%oth of 1%) upon the amount of capital stock initially employed here, the tax to be not less than $10 nor more than $2,500; and that thereafter it must pay additionally a similar tax on any annual increase over a preceding year’s capital. According to defendant’s interpretation this additional tax is to be levied irrespective of whether or not the taxed *101 annual increase raises the total capital stock above that originally employed; and that there is no limit to such additional levies, except that the tax on any one annual increase cannot exceed $2,500.
We are unable to conclude that the statute as written is free of ambiguity and that it clearly contemplates one or the other of the mentioned two results. In fact, it occurs to us that, if only the language thereof is considered, there' .is yet a third possible interpretation of the disputed provisions. Thus, it might well be urged, as was suggested during oral argument of these cases, that provided for thereby are two taxes having a total limit of $5,000: one levied at the time of the admittance of the corporation to this state, it not to exceed $2,500: the other levied on any subsequent annual increase of capital stock, the maximum tax on all increases being $2,500.
Since, therefore, the statute is ambiguous resort must be had to the usual methods of statutory interpretation. In this connection we find that the doctrine of contemporaneous construction weighs heavily in favor of plaintiffs’ contention. Thus, the law in question was first enacted by the Legislature in 1922 as Act No. 107; and from that year until 1953 (a period of more than thirty years) the various administrative officers in charge of collecting the tax (including the present Secretary of State who is the defendant herein) consistently construed it as do the plaintiffs. According to the record before us no corporation, was called upon during that period to pay more than a cumulated total tax of $2,500. In fact, when a foreign corporation filed an annual report showing that such total had been paid it was usually informed that no further tax payments were due. Too, occasionally a remittance by a company for a tax on an annual increase of capital, where $2,500 had already been paid, was returned with the notation that it was an overpayment.
Furthermore, for correctly construing the ambiguous LRS 47:2611, consideration should be given to the title to Act 107 of 1922 (the source of the statute in question, as aforeshown) which recited that it was an act “Requiring every corporation organized under the laws of any other state, territory, or country as a condition precedent to being admitted to do business in this State, to pay into the State Treasury a tax of one-twentieth (%o) of one per cent on the capital stock employed by such corporation in this State, or any subsequent increase thereof, and fixing the minimum and maximum of such tax; requiring annual reports from such corporations to the Secretary of State for the purpose of computing the amount of capital stock on which such tax is based, and providing a penalty for failure to comply with the provisions of this act.” (Italics ours.)
This title plainly stated that the tax is for the admission of a foreign corporation to do business in this state — not for the privilege of continuing operations after its admittance. And undeniably only a single tax is therein contemplated. Had it been the intention of the Legislature to authorize two separate taxes (a tax for admittance and an annual tax for continuance of business) as contended for by the defendant, surely the title would have mentioned the fixing of minimum and maximum taxes and made specific reference to an annual tax on increases of capital.
Moreover, the effect of the language of the title to such act becomes even more compelling in favor of the contention of plaintiffs when we compare such language with that contained in the title to Act 8 of 1932 (the original corporation franchise tax statute that was later incorporated in LRS 47:601 et seq.) which clearly provided for the levying of an annual tax on the capital stock, surplus and undivided profits of both domestic and foreign corporations. The title to such original statute recited that it was an act “to levy an annual franchise tax on corporations doing business in the State of Louisiana, for the privilege *102 of carrying on, doing business, or the continuance of its charter within this State. * * *»
Incidentally, the 1932 franchise tax was levied and made payable annually on all capital stock, including any annual increase thereof, and no maximum was stipulated. Hence, if defendant’s interpretation herein is correct it could be forcefully argued that the 1932 statute superceded the 1922 act with respect to taxing capital stock increases. However, it is to be noted (and this supports plaintiffs’ contention) that both acts were included in the Revised Statutes of 19S0, thereby indicating that the two did not contemplate an identical tax — rather that contemplated -by one was merely a tax or charge for the admittance of a foreign corporation to this state, and by the other was an annual franchise tax.
Finally, we cannot accept the defendant’s interpretation of LRS 47:2611 because of the inequitable and discriminatory results which might flow therefrom. For example, the following unjust result, suggested in the brief of plaintiffs’ counsel and from which we quote, is possible: “ * * * One foreign corporation can enter the State with 100 million dollars in capital and pay only a tax of $2500.00 over the next 20 years on this capitalization. Another foreign corporation can enter the State with only 5 million dollars of capital and it will likewise pay $2500.00 in taxes on its capital stock. If this 5 million dollars in capital were increased in the amount of 5 million dollars per year over the next 19 years it would pay an additional tax of $2500.00 per year or a total of $47,500.00 in additional taxes over and above the $2500.00 maximum paid in the beginning. The result would be that these two corporations which ultimately employed the same amount of capital in the State would pay a great disparity in taxes for the privilege of entering the State. The first corporation would pay $2500.00 whereas the second corporation would pay $50,000.00 or 20 times as much in order to employ the same amount of capital in Louisiana. * * * ” Parenthetically, with reference to such • example, we might observe that the first corporation would have employed an average capital of $100,000,000 per year; whereas, the yearly average capital of the other corporation, required to pay twenty times more taxes, would have been much less.
Another inequitable result could easily be reached under the following circumstances: Suppose foreign corporations A and B are admitted to do business in Louisiana, each at the time of admission employing here $20,000,000 capital and paying the maximum $2,500 tax. Thereafter, for six years A’s capital is maintained at that figure; but B’s capital during such period alternately decreased and increased at the rate of $5,000,000 each year (starting with a decrease). For the six years A would pay only the initial maximum tax. Yet B, according to the interpretation of defendant, would pay on its three annual increases taxes in the sum of $7,500 (in addition to the original $2,500), and this notwithstanding that during the six year period it had actually employed (because of the decreases) less capital than did corporation A.
In our opinion such inequitable results were not contemplated by the Legislature in enacting Act No. 107 of 1922 (now LRS 47:2611 et seq.). We believe, as did the administrative officials for more than thirty years, that the assessment prescribed in the contested provisions was intended to be a single tax levied for the privilege of a foreign corporation’s “being admitted to do business in this state”; that the amount thereof is determined by the capital employed in this state, but it is not to exceed $2,500; and that the required payments on increases of capital stock were merely to prevent a corporation from entering with the minimum tax of $10 and thereafter increasing its capital without *103 paying the additional tax up to the maximum.
True, there is a requirement in the statute that each admitted foreign corporation file annually with the Secretary of State a report showing its gross assets employed in this state. But the obvious purpose of the required report is to provide the means for checking on those companies which commenced doing business here with capital stock of a value that did not then necessitate payment of the maximum tax.
For the reasons assigned the judgment appealed from is reversed and set aside, and there is now judgment determining, declaring and decreeing that plaintiff Union Producing Company owes no tax under the provisions of LRS 47:2611 et seq. (the foreign corporation capital stock tax statute), it having paid the maximum tax of $2,500 provided for therein.