176 So.2d 425

**TENNESSEE GAS TRANSMISSION COMPANY**

v.

**VIOLET TRAPPING COMPANY, Inc.**

No. 47556.

Jan. 18, 1965.

On Rehearing June 7, 1965.

Dissenting Opinion June 15, 1965.

Rehearing Denied and Dissenting Opinion

Filed July 2, 1965.

John W. Bryan, Jr., New Orleans, for defendant-applicant.

Haynes L. Harkey, Jr., City Atty., William F. Pipes, Jr., Asst. City Atty., for City of Monroe, amicus curiae.

Alwine L. Mulhearn, Mulhearn & Mulhearn, Tallulah, for Mulhearn Rental Properties, Inc., amicus curiae.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ernest A. Carrere, Jr., Gerald N. Sims, New Orleans, Shotwell & Brown, Burt W. Sperry, Monroe, for plaintiff-respondent.

Jack P. F. Gremillion, Atty. Gen., Carroll Buck, First Asst. Atty. Gen., Harry Fuller, Second Asst. Atty. Gen., M. E. Culligan, John E. Jackson, Jr., Asst. Attys. Gen., for intervenor.

McCALEB, Justice.

The question for decision on this writ of certiorari is whether R.S. 19:13, as last amended by Act 108 of 1960, and Articles 2634 and 2636 of the Civil Code, as amended by Acts 92 and 93 of 1960, which abolish suspensive appeals in all expropriation cases, are violative of that part of Section 2 of Article 1 of the Louisiana Constitution providing that " * * * private property shall not be taken·or damaged except for public purposes and after just and adequate compensation is paid" and·that part of Section 15 of Article 4 providing " * * nor shall vested rights ·be divested, unless for purposes of public utility, and for just and adequate compensation previously paid."

Plaintiff herein (respondent in writ), having secured from the Federal Power Commission a certificate of public convenience and necessity under authority of U.S.C.A. Title 15, Section 717f (h) for the construction of an interstate pipeline,

instituted expropriation proceedings under R.S. 19:12–14 for a right-of-way 150 feet in width over the property of defendant (relator herein) with the right to dredge a 50-foot flotation canal or ditch thereon for the purpose of laying a second high pressure gas pipeline, the first one having been previously installed by conventional agreement of the parties.

Defendant resisted the demand, filing in limine exceptions of no right or cause of action in which it attacked the certificate granted plaintiff by the Federal Power Commission on the ground that it was issued without notice or hearing and, therefore, was violative of the due process clauses of the State and Federal Constitutions.

Defendant further objected to the jurisdiction of the district court, alleging that the servitude herein sought to be expropriated was res judicata in view of a settlement between the parties made in 1958 in compromise of an expropriation suit previously brought by plaintiff against defendant under which plaintiff acquired a right-of-way across defendant's land for the laying of two pipelines. Defendant asserted that this compromise agreement contained a special covenant that the right-of-way therein granted by defendant was sufficient in area for the construction of a second pipeline, for which the additional servitude is presently sought, as well as for the first

pipeline which was installed on defendant's property in accordance with the agreement.

In its answer, defendant reiterated that the servitude demanded in this case is not only violative of the compromise settlement but also that it far exceeds the acreage reasonably necessary for plaintiff's purpose. Alternatively, defendant claimed compensation and damages in the sum of $100,000.00.

After a hearing on these issues in the trial court, judgment was rendered in favor of plaintiff conveying a right-of-way 150 feet in width over certain described property of defendant comprising an area of 17.056 acres, more or less, and a permanent right-of-way and servitude 50 feet in width upon completion of the pipeline extending over 5.685 acres, more or less. The judgment also granted plaintiff the right to dredge a flotation canal "approximately" 50 feet in width upon the right-of-way. The compensation awarded defendant for the property taken, including severance damages, was $2,877.19 and it was ordered that this sum be deposited by plaintiff with the Clerk of Court for the account of defendant in accordance with law and that the costs of the proceedings be paid by defendant, Violet Trapping Company, Inc.

Defendant timely applied for a new trial and, when this was refused, it moved for a suspensive appeal. The motion was denied by the judge on the ground that, un-

der R.S. 19:13, as amended by Act 108 of 1960, defendant was entitled to a devolutive appeal only. Thereafter defendant applied to the Court of Appeal, Fourth Circuit, for remedial writs which were refused, the Court noting " * * * the act of the legislature in limiting appeals in expropriation cases to devolutive appeals is not unconstitutional."

Defendant then sought relief from this Court and we granted a writ of certiorari, coupled with a rule to show cause and an order staying all proceedings. However, we restricted our review in the matter to a consideration of the constitutionality of R.S. 19:13 and Articles 2634 and 2636 of the Civil Code which, as last amended during the 1960 session of the Legislature, abolish suspensive appeals in all expropriation cases.

Before engaging in discussion of the important problem presented, we feel impelled to note that counsel for defendant initially contends that, under existing jurisprudence, R.S. 19:13 has been interpreted so as to allow suspensive appeals on substantive constitutional points which he says are presented in the instant expropriation case.

There is no merit in this contention for the statute and codal articles, as last amended, are clear in stating that their purpose is to deny suspensive appeals in all instances. R.S. 19:13, as amended by Act 108 of 1960, declares:

"No party to any expropriation proceeding shall be entitled to or granted a suspensive appeal from any order, judgment, or decree rendered in such proceeding, whether such order, judgment, or decree is on the merits, exceptions, or special pleas and defenses, or any or all of them. The whole of the judgment, however, shall be subject to the decision of the appellate court on review under a devolutive appeal.

"When a devolutive appeal is taken by either party, payment to the owner of the amount awarded by the trial court, or the deposit thereof in the registry of the court, *entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance.* If any change in the amount awarded is made on such appeal, the plaintiff shall pay the additional assessment or recover the surplus paid." (Italics ours).

Article 2634, as amended by Act 92 of 1960, has been rewritten so that its provisions are now identical with R.S. 19:13, as quoted above. And Article 2636, reserving the landowner's right to question the necessity for the taking, has been altered

substantially by Act 93 of 1960;[1] its former recitals anent appeals have been eliminated and the right of appeal is now controlled by Article 2634 and R.S. 19:13.

The changes effected by the 1960 Legislature were brought about by a series of decisions beginning with Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93 (1915) wherein Article 2634 of the Civil Code (as originally written)[2] was construed to authorize suspensive appeals in all expropriation cases except those in which the only issue in contest was the amount of the jury's verdict in favor of the landowner.

In Tennessee Gas Transmission Co. v. Wyatt Lumber Co., 221 La. 886, 60 So.2d 713 (1952), it was held that, in view of Article 2634 of the Civil Code and the decision in Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Company construing it, the provisions of R.S. 19:13, declaring that appeals from the judgment of the lower court do not suspend the execution of the judgment (as the statute then provided), were ineffective when the defendant was contesting either the right of expropriation or the necessity therefor. This ruling was followed in Inter-State Oil Pipe Line Co. v. Cowley, 223 La. 672, 66 So.2d 588 (1953).[3]

In an obvious attempt to nullify the effect of the decisions in the Wyatt Lumber and Cowley cases, the Legislature in 1954, by Acts 705 and 706, amended and reenacted R.S. 19:13 and Article 2634 of the Civil Code so as to provide in identical language that there is no suspensive appeal but only a devolutive appeal in expropriation suits. However, in Louisiana Power & Light Company v. De Bouchel, 117 So.2d 94, decided in 1959 by the then Court of Appeal for the Parish of Orleans, it was held that the Legislature's efforts

1. It now reads: "If any owner shall be of opinion that the quantity of land sought to be purchased by any corporation exceeds that which is reasonably necessary for the purpose intended by the company, it shall be lawful for him to file a special plea, setting forth this fact, and in such case the court shall determine not only the value of the land to be expropriated, but also the extent of land over which the company may exercise the forced expropriation; *the whole always subject to the decision of the court on appeal, which appeal, however, as provided by Article 2634, shall not suspend the execution of the judgment of the lower court.*" (Italics ours).

2. This Article, which, as adopted in 1870, provides for an appeal to the Supreme Court from the judgment of the lower court which " * * * shall not suspend the execution of such judgment * * * ", has no counterpart in any of the prior codes or the Code Napoleon. The only corresponding article is Article 2610 of the Code of 1825 which simply provided that the verdict of the jury and the judgment founded on it are conclusive "except on appeal".

3. Compare State v. Central Realty Investment Company, 226 La. 1085, 78 So. 2d 182 (1955).

in 1954 were fruitless—insofar as cases involving the issue vel non of the necessity for the expropriation—forasmuch as Civil Code Article 2636, providing for a review of the district court's judgment in such cases and declaring that the question is "always subject to the decision of the Supreme Court on appeal", clearly indicated that such an appeal may be suspensive.

After the decision in Louisiana Power & Light Company v. De Bouchel and kindred cases, in which the original opinion was reinstated and approved by per curiam on application for rehearing (see Louisiana Power & Light Company v. Meraux, La. App., 117 So.2d 101), the Legislature at its next regular session in 1960, by enactment of the amendatory laws now under consideration, abolished suspensive appeals in all expropriation cases. Accordingly, the question is squarely presented as to whether these statutes are violative of that part of Section 2 of Article 1 and the kindred provision of Section 15 of Article 4 of our Constitution declaring that private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.

This Court has but recently held in State Through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144, that R.S. 19:-141–160, the quick taking statute which was made applicable to the Sabine River Authority, was violative of Section 2 of Article 1 and Section 15 of Article 4 of our Constitution in that it permitted the taking of private property prior to the payment of just and adequate compensation by leaving the matter of whether the compensation is "just and adequate" to future determination. In that opinion, the author painstakingly reviewed the civil law and jurisprudence on the subject of condemnation in Louisiana and observed:.

> "Undoubtedly the people of Louisiana have found it advisable to adopt a special constitutional provision to prevent their legislature from authorizing the taking of land for public use without the prior payment of just and adequate compensation. We can conceive of many valid reasons which would justify this constitutional safeguard, such as the insolvency of an expropriating authority—a municipal, even a state government unable to meet its obligations—and other evils that might ensue from a failure to provide for the payment of compensation prior to the taking. But we need not delve into the reason why. It is sufficient that the requirement is clearly set forth in the constitution."

Further on in the opinion, the court quoted approvingly from State ex rel. Cotting v. Sommerville, 104 La. 74, 28 So. 977 (1901) where our predecessors held that the relator (the landowner) was entitled to appeal suspensively from the action of a dis-

trict judge in dissolving upon bond an injunction, which had been granted in favor of relator restraining the expropriating authority from taking possession of relator's property in advance of payment of adequate and just compensation. And, after citing Bickham v. City of Shreveport, 156 La. 648, 101 So. 8 (1924); De Bouchel v. Louisiana Highway Commission, 172 La. 908, 135 So. 914 (1931); Tolmas, Inc. v. Police Jury of the Parish of Jefferson, 231 La. 1, 90 So.2d 65 (1956); Williams v. Department of Highways, 92 So.2d 98 (La. App. 1957) and State, Through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958),[4] the Phares opinion concludes:

> " * * * that the legislature is powerless to enact any legislation that would permit a taking, either possession or title, from an owner until payment of just and adequate compensation has been made or at least tendered and deposited to the owner's account in the registry of court."

The provisions of Section 2 of Article 1 and Section 15 of Article 4 of the Constitution are restraints on legislative power. But for these limitations, the right of the Legislature to enact expropriation laws and prescribe suitable procedure in such suits is plenary. The first constitutional restriction against the taking of private property except for public use is to be found in Article 109 of the Constitution of 1845, prohibiting the passage of ex post facto laws, any law impairing the obligation of contracts or divesting vested rights "unless for purposes of public utility, and for adequate compensation *previously* made." This provision was repeated in the Constitutions of 1852 (Article 105) and 1864 (Article 109). In the 1868 Constitution, the word "previously" was omitted from Article 110 and it was under this Constitution that Article 2634 of the Civil Code was enacted upon the adoption of the Code in 1870. That Article, which had no previous counterpart in our codal law,[5] provided for an appeal to the Supreme Court from the verdict of the jury and judgment of the lower court but that such appeal shall not suspend the execution of the judgment of expropriation and that payment of the amount of the verdict by the company to the owner or the deposit thereof subject to the owner's order in the hands of the Sheriff, shall entitle the corporation to the right, title and estate in and to the land described in the petition in the same manner as a voluntary conveyance would do. It is manifest that, at the time

4. In the Macaluso case the constitutionality of the quick-taking statute, as it applied to the Department of Highways, was upheld but only because the statute was enacted pursuant to special authority granted to the Legislature by Article VI, Section 19.1 of the Constitution by amendment ratified on November 2, 1948.

5. See Footnote 2, supra.

the Revised Civil Code of 1870 was adopted, this Article might not have been violative of the Constitution of 1868 as that Constitution did not require payment to be made "previously" to the taking. However, with the adoption of the Constitution of 1879, which restored the word "previously" in Article 155 to the provision that vested rights shall not be divested "unless for purposes of public utility and for adequate compensation (previously) made", it is readily seen that the change may have cast doubt upon the validity of Article 2634 as it then stood, since the question, among others, could have arisen whether the taking prior to final judgment on appeal would divest vested rights in advance of determination that the compensation awarded by the jury or judge was just and adequate.

In the Constitution of 1879 (the first constitution after the Carpet Bag era), the prohibition against the divestation of vested rights was reinforced and extended by special declaration as to private property by Article 156. It provided that "Private property shall not be taken nor damaged, for public purposes without just and adequate compensation being first paid." This proscription, as well as the present provisions of Section 15 of Article 4, was included in the Constitutions of 1898 and 1913 in virtually the same language and, in the Constitution of 1921, it was made part of the Bill of Rights.

Thus, it is to be observed that the Constitution of Louisiana and the construction given the fundamental law by this Court in the above cited cases, as recently stated in State Through Sabine River Authority v. Phares, reveal a strict adherence to the limitation on expropriation of property, that is, that private property may not be taken except for public purposes and then only after just and adequate compensation has been paid. However, all those cases involved situations where property was taken prior to adversary litigation in the district court.

The question before us deals with the applicability of these constitutional restrictions to matters on appeal and it differs with the above cited cases only in the circumstance that, here, there has been a determination in the court of first instance upholding the right of expropriation and fixing the compensation. Yet, these rulings are subject to review and, until a final judgment is rendered on appeal, it cannot rightly be said that defendant has had the full protection of his constitutional rights if he is to be divested of his property during the pendency of the appeal. Hence, it would seem that any law which authorizes such divestiture of property violates the constitutional restriction in the same manner—for although it may not be as flagrant an abuse as the quick-taking law involved in the Phares case, it nonetheless sanctions a taking in advance of final disposition. If

the constitutional restraints are infringed, the offending law is void; the extent of the violation is immaterial.[6]

The right of an appeal in Louisiana is a constitutional right in most instances— for all courts of this State, those of original and appellate jurisdiction, are established by Article 7 of our Constitution, unlike the inferior Federal courts (district and circuit courts) which are established by Acts of Congress and the courts in many of our sister states which are created by legislative enactment. Accordingly, since the respective jurisdictions of the appellate courts are fixed in our Constitution (see Sections 10, 29 and 36 of Article 7), an appeal to those courts is not a matter of grace but a matter of right (see State ex rel. Boutte v. Judge of Superior District Court, 28 La.Ann. 547; State ex rel. Duffard v. Whitaker, 45 La.Ann. 1299, 14 So. 66; Succession of Damico, 161 La. 725, 109 So. 402; State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601 and Harnischfeger Corp. v. C. W. Greeson Co., 219 La. 546, 53 So.2d 488) provided that the appeal is taken to the court having jurisdiction of the case.[7]

On the other hand, due process of law does not require that an appeal in a civil case or in a criminal case, for that matter, suspends execution of the judgment appealed from. Whether a suspensive appeal is permissible is a matter within the province of the Legislature[8] provided, of

6. Indeed, it would appear that R.S. 19:13 and Article 2634, as amended, are just as objectionable as that part of Act 9 of the Extra Session of 1930, which authorized the Highway Commission " * * * to enter the land and take *possession* * * * *prior to the termination* of said expropriation proceedings * * *" (found unconstitutional in De Bouchel v. Louisiana Highway Commission, supra) because those statutes grant plaintiff a title to and possession of the property immediately upon deposit of the amount of compensation fixed by the trial judge which, of course, is *prior to the termination of the expropriation proceedings.*

7. Counsel for plaintiff contend that there is no constitutional right of appeal in Louisiana and cite in support thereof several cases, viz., American Surety Co. of New York v. Brim, 176 La. 867, 147 So. 18; State ex rel. Ryanes v. Gleason, Supervisor, 112 La. 612, 36 So. 608 and Conerly v. Democratic Executive Committee, 130 La. 457, 58 So. 148. The authorities depended on are inapposite. The Brim case merely states that an appeal is not necessary to due process of law; the Ryanes case involved the denial of the relator's right to register to vote and it was held that, since such right did not have a monetary value of $2,000, this Court was without jurisdiction of his appeal. To the same effect is the Conerly case, where the defendant claimed that he was entitled to enter a third primary election for Police Juror and it was held that, since the right to office did not involve $2,000, the Court was without appellate jurisdiction.

8. However, our procedural law authorizes suspensive appeals save in certain special instances. See Articles 564, 565 and 575 of the Code of Practice of 1870 and Article 2123, Code of Civil Procedure of 1960. As stated in Young v. Village of Bossier City, 152 La. 18, 92 So. 719, "The suspensive appeal is the

course, that the Legislature may not deny a suspensive appeal in any case when such denial impinges upon the constitutional rights of the aggrieved party or otherwise violates a constitutional restraint on the power vested in that branch of the government. That is exactly the situation here, i. e., whether the legislative denial of a right to a suspensive appeal in expropriation cases divests the defendant of his property *prior* to a final determination that the property is being taken for a public purpose or that the plaintiff has a right to take it or that just and adequate compensation is being paid for it.

The main thrust of plaintiff's position is that, since the Louisiana Expropriation Statute (R.S. 19:2–14) is not a quick-taking statute, the case differs from State Through Sabine River Authority v. Phares, supra, because our expropriation laws provide all the safeguards required by the due proceses clauses of both the State and Federal Con-

stitutions. In support of this contention, much reliance is had upon McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867; Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 and other cases which held that, if an opportunity for a full and complete hearing has been duly afforded, due process of law does not require the grant of appellate review.

We do not dispute the principle announced in the cited cases that due process of law is satisfied when an opportunity for a complete hearing has been afforded, as stated by Nichols on Eminent Domain, Vol. I, Sec. 4.108,[9] and that a right of appeal is not generally regarded as an indispensable part of due process. However, in Louisiana, where the State Constitution fixes appellate jurisdiction, an appeal may not be denied and is a constitutional right of the aggrieved party if the case is within the scope of the jurisdiction of the appellate court.

rule (C.P. art. 575); the nonsuspensive appeal the exception (C.P. art. 580)." Other than the statutes under consideration, the only special instances in which suspensive appeals are not allowable as a matter of right are judgments awarding custody of a person or alimony, C.C.P. Art. 3943; judgments appointing or removing legal representatives, C.C.P. Arts. 2122, 2974, 4068 and 4548, and from judgments issuing a preliminary or final injunction (see C.C.P. Art. 3612) in which instances the granting or refusal of a suspensive appeal rests in the sound discretion of the trial judge.

9. Nevertheless, we are somewhat skeptical that the 1893 decision in McKane v. Dur-

ston, holding that one convicted of a criminal offense under State law is not denied due process when he is refused bail pending appeal from his conviction, will withstand the revised test of due process applied in cases like the 1956 pronouncement of the U. S. Supreme Court in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, that indigent persons appealing from their conviction in a State court are entitled to have a full transcript of the proceedings furnished them at state expense and that denial of such rights are violative of the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution.

But, apart from this, it seems to us that the position taken by plaintiff's counsel does not meet the issue for decision, viz., whether, in view of the constitutional restraints imposed on the Legislature by Section 2 of Article 1 and Section 15 of Article 4 of the State Constitution, that body violates the constitutional command that private property shall not be taken except for public purposes and only after just and adequate compensation is paid, when the effect of abolition of suspensive appeals in all expropriation cases is to sanction the taking of the private property *before* final determination on appeal that the plaintiff has the right to expropriate; that the expropriation is for a public purpose and that the amount of compensation awarded by the trial court is just and adequate.

Let us consider, for a moment, the result which would follow in expropriation cases of this sort in the event of a reversal of the trial court's judgment on devolutive appeal. Under the present provisions of R.S. 19:13, the judgment of the trial court upholding the expropriation and the payment of the award into the registry of the court "entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance." Thus, plaintiff secures title and goes into possession and has dominion and control of the property during the pendency of the appeal. But what happens if the appellate court should rule that plaintiff has no right to ex-

propriate the property or that it is not being taken for a public purpose, or that the land sought to be expropriated is not reasonably necessary for plaintiff's needs? Of course, the reversal of the district court's judgment would carry with it an annulment of plaintiff's interim title and possession. But would such a decree restore, ipso facto, the landowner to possession or would he have to sue for it? And would the landowner be entitled to indemnity for the damages he sustained during the interval when plaintiff possessed the property? Is plaintiff's title and possession during the pendency of a devolutive appeal a legal possession? Undoubtedly such possession is authorized by the statute, even though the appellate court may subsequently determine that the trial court's judgment is erroneous.

Again, let us suppose that the only defect found in the judgment after review on appeal is the inadequacy of the compensation awarded the landowner. In such case, the court will increase the award by providing just compensation—but will such a decree entitle the landowner to damages or remuneration from plaintiff for its occupancy and use of the premises *prior* to the payment of just and adequate compensation as finally adjudicated! Allowance of such recovery may well be doubted if the assailed statutes were permitted to stand.

We hold that the legislative fiat abolishing suspensive appeals in all expropriation cases is violative of the limitations

contained in Section 2 of Article 1 and Section 15 of Article 4 of our Constitution.

For the reasons assigned, the writ of certiorari heretofore issued is made peremptory to the extent that the district judge is ordered to forthwith grant defendant a suspensive appeal returnable to the Court of Appeal, Fourth Circuit, in accordance with law upon application made by defendant not later than five days from the finality of this decree. Meanwhile, the stay order heretofore issued is to remain in full force and effect for the period fixed by this order. The costs of the application for writs to the Court of Appeal, Fourth Circuit, and the proceedings in this Court are to be paid by plaintiff.

HAMITER, J., dissents.

HAWTHORNE, Justice (dissenting).

R.S. 19:13 as amended by Act 108 of 1960 and Articles 2634 and 2636 of the Civil Code as amended by Acts 92 and 93 of 1960 are not violative of Section 2 of Article 1 and Section 15 of Article 4 of our state Constitution because they deny a suspensive appeal in expropriation proceedings conducted under these statutes.

At the inception it should be noted that there is no constitutional right to a suspensive appeal, and the majority opinion does not hold that there is. The majority opinion does hold, however, that the provisions of the statutes denying a suspensive appeal have the effect, insofar as the defendant is concerned, of taking his property before final determination on appeal "that the plaintiff has the right to expropriate; that the expropriation is for a public purpose and that the amount of compensation awarded by the trial court is just and adequate", and concludes that this violates the above cited constitutional provisions.

The statutes in question afford the defendant a hearing or trial in the district court for a determination of whether the plaintiff has the right to expropriate, whether the expropriation is for a public purpose, and whether the amount of compensation is just and adequate, and all these questions are determined prior to the taking. If the district court finds that plaintiff has the right to expropriate, that the expropriation is for a public purpose, and that the amount of compensation is just and adequate, even then the plaintiff before taking possession must pay to the defendant the amount of the award or must deposit it in the registry of the court subject to defendant's order. The statutes provide that if a devolutive appeal is taken, "The whole of the judgment * * * shall be subject to the decision of the appellate court on review * * *".

Thus it is clear that under the provisions of the statutes when a devolutive appeal has been taken by the defendant, there is no *final* or *absolute taking* of the property until final determination of the case on appeal;

and, even then, to make the taking absolute the plaintiff must pay any increase in the amount of the award found to be due by the appellate court. If the appellate court finds that the plaintiff does not have the right to expropriate or that the expropriation is not for a public purpose, the plaintiff which has taken possession then becomes a trespasser, and in that event the law provides to defendant adequate remedies. Though there can be no final or absolute taking until after the case becomes final on appeal, even then the taking is not final and absolute until the plaintiff pays just and adequate compensation. How, then, can it be said that defendant's property is being taken before the payment of just and adequate compensation?

The courts of many states have passed upon the constitutionality of statutes permitting an expropriating authority to take possession and remain in possession pending appeal. See Annotation, 55 A.L.R. 201, and supplemental decisions thereunder. The vast majority of cases in this annotation hold that just compensation provisions of the Constitutions have been complied with, and that the expropriating authority may possess the property for the purpose of carrying out the expropriation pending the appeal, if the value of the property (having been ascertained in a reasonable manner) is made available to the owner—by tender, deposit in court, etc. They negative the contention that the constitutional guarantee of just compensation previously paid requires that the expropriating authority wait until *final* determination of the case.

In my view the majority in this case are giving a very strict and narrow interpretation to the constitutional provisions relied upon, and in doing so they completely overlook the damage that may come to the economy and progress of this state by a landowner's use of dilatory tactics to delay final determination on appeal of the right of possession in expropriation cases.

The majority opinion cites and quotes at length from State Through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144, and relies on that case as authority for its holding here. I dissented from the decision of the majority in that case, and the reasons for that dissent are applicable here. See State v. Moity, 245 La. 544, 159 So.2d 148.

In conclusion, as I view the matter, the purpose of the provisions of our Constitution requiring just and adequate compensation is to assure the landowner that his property will not be expropriated without payment first being made to him for it; and once he has been paid for it a value ascertained by reasonable process, the constitutional protection to him is fully complied with.

## ON REHEARING

HAMLIN, Justice:

Rehearing was granted in this matter in order that we might reconsider the question of whether LSA–R.S. 19:13,[1] as last amended by Act 108 of 1960, and Articles 2634 and 2636 of the Civil Code, as amended by Acts 92 and 93 of 1960, which abolish suspensive appeals in all expropriation cases, are violative of part of Section 2 of Article I, La.Const. of 1921, and part of Section 15 of Article IV, La.Const. of 1921.[2]

On original hearing, we concluded, "We hold that the legislative fiat abolishing suspensive appeals in all expropriation cases is violative of the limitations contained in Section 2 of Article 1 and Section 15 of Article 4 of our Constitution."

Plaintiff, Tennessee Gas Transmission Company, applicant for rehearing, assigns the following errors to our original decision:

1. The Court was in error in failing to recognize that the majority decision frustrates the Natural Gas Act, 15 U.S.C.A., Sec. 717, a–w, especially that part of the Act which provides:

> "* * * it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, * * *."

2. The decision is violative of the Fifth and Fourteenth Amendments to the United States Constitution in that it holds that there must be an appellate determination of just compensation to meet the constitutional test, this being particularly so, in that the right stems from the United States Constitution and a federal statute and not from any constitutional provision of the State of Louisiana.

3. The Court erred in going beyond the limits set forth when it granted Certio-

1. "No party to any expropriation proceeding shall be entitled to or granted a suspensive appeal from any order, judgment, or decree rendered in such proceeding, whether such order, judgment, or decree is on the merits, exceptions, or special pleas and defenses, or any or all of them. The whole of the judgment, however, shall be subject to the decision of the appellate court on review under a devolutive appeal.

 "When a devolutive appeal is taken by either party, payment to the owner of the amount awarded by the trial court, or the deposit thereof in the registry of the court, entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance. If any change in the amount awarded is made on such appeal, the plaintiff shall pay the additional assessment or recover the surplus paid." LSA–R.S. 19:13.

2. "* * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." Sec. 2, Art. I, La.Const. of 1921.

 "* * * nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." Sec. 15, Art. IV, La.Const. of 1921.

rari [3] in that it attempts to justify its decision by alluding to unanswered hypothetical questions which questions pertain to matters which do not concern any constitutional guarantee and, specifically, do not concern the constitutional guarantee of just compensation.

4. The Court erred in reaching a conclusion which does violence to certain provisions of the Code of Civil Procedure.

5. The Court erred in holding that just compensation as determined by the district court and the deposit thereof into the Registry of the Court in accordance with law does not meet the constitutional requirement of Sec. 2 of Art. I, La. Const. of 1921.

6. The Court erred in predicating its decision on the rationale of State, through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144.

7. The Court erred in citing Art. VII of the Constitution, Secs. 10, 29, and 36, as authority for the proposition that defendant has a right of appeal "not as a matter of grace but as a matter of right."

8. The Court erred in holding that the provisions of the State Constitution fixing general appeal jurisdiction had the effect of creating a constitutional right of appeal in any specific case and thereby depriving the Legislature of its recognized prerogative to determine cases in which appeals will be allowed.

9. The Court erred in holding that the rights of the defendant would be done violence by a statute which provides that a judgment of the trial court "entitles plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance"; such conclusion is completely contrary to a multitude of decisions in other states and the federal courts which have dealt with such problems for well over 100 years.

10. The Court erred in failing to recognize that while the district court's judgment entitles plaintiff to the property described therein "in the same manner as would a voluntary conveyance", plaintiff's title is provisional and completely subject to the orders and judgment of the appellate courts. Plaintiff's right of possession is complete as a result of the

---

3. In granting the writ, we stated, "Consideration of these writs is restricted to the question whether the statutes abolishing suspensive appeals in expropriation cases of this kind are violative of that part of Section 2 of Article 1 of the Constitution providing that 'private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid' and that part of Section 15 of Article 4 providing 'nor shall vested rights be divested unless for public utility and for just and adequate compensation previously paid.' In this connection, State, Through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144."

judgment of the district court, but its exercise of that right is at its own risk and subject to the further orders of the appellate courts.

11. The Court erred in failing to recognize that through the use of its decision a wilful and malicious landowner could cause untold hardship and unreasonable delay in the construction of all public works by the State of Louisiana (Highways excepted), municipalities, port authorities, school boards, drainage districts, police juries, gas companies, electric companies, and all other companies having the right of expropriation for public purposes through the simple device of taking an appeal from the district court's award of just compensation, which appeal could be based upon an unwillingness to accept the court's award as to the value of the right sought or the court's rejection of an unwarranted or unreasonable claim for severance damage.

Numerous parties filed briefs in support of plaintiff's application for rehearing;[4] they assigned many errors, hereinafter discussed, to this Court's original decision. They now urge the seriousness of the instant matter because of the impact of the decision upon the public, the oil and gas industry, and the economy of Louisiana, and they pray that we reverse our original decree.

Herein, defendant avers the correctness of our original decision. Counsel urges that the errors assigned to this Court's original opinion boil down to a simple plea to strain a constitutional prohibition to gain for the · expropriator a procedural advantage on appeal; he contends that the Act involved by its terms allows suspensive appeal on substantive constitutional points, and, if not, that the amended procedural legislation is unconstitutional under the provisions of the United States Constitution and under the requirements of the Constitution of the State of Louisiana. In

4. The State of Louisiana; the State of Louisiana, through the Department of Highways; District Attorneys, Attorneys, and Special Counsel for the Parishes of Morehouse, Ouachita, East Carroll, Madison, Tensas, Iberia, St. Martin, St. Mary, East Baton Rouge, Lincoln, Union, Jefferson, St. Bernard, Acadia, Lafayette, Vermillion, Iberville, Pointe Coupee, Rapides, West Baton Rouge, St. Landry, Bossier, Webster, St. Charles, St. John, East Feliciana, West Feliciana, Plaquemines, Bienville, Claiborne, Jackson, Caddo, Grant, Winn, Beauregard, Vernon, St. Tammany, Washington, and Orleans; Ex-Officio Attorneys for the Police Juries, School Boards and other governmental agencies within their judicial districts; Louisiana Municipal Association; Blanchard, Walker, O'Quin & Roberts; Cook, Clark, Egan, Yancey & King; Oliver, Digby & Fudickar; Sanders, Miller, Downing, Rubin & Kean; Thompson, Thompson & Sparks; Hargrove, Guyton, Van Hook & Ramey; Theus, Grisham, Davis, Leigh & Brown; Wilkinson, Lewis, Woods & Carmody; Andrew P. Carter for Louisiana Power & Light Company and Louisiana Gas Service Company; Taylor, Porter, Brooks, Fuller & Phillips; Landry, Watkins, Cousin & Bonin.

brief, counsel states, "The concern of the Court is to interpret the law and to apply it rather than to judicially amend the Constitution of Louisiana in a manner never contemplated by the drafters of that instrument. If, as a matter of economic or business fact, there is any need for the favor sought to be conferred on private industrial litigants by the subject statutes as amended, there is a proper source to which to apply and a proper means provided to obtain the constitutional relief sought. The Louisiana Constitution does not vest the Courts with the authority to amend or to destroy the constitutional prerogatives of the Louisiana people. * * *"

"The term 'Expropriation' is of foreign origin and insofar as it means the compulsory taking of property it is substantially synonymous with 'Eminent Domain', with this important difference, as a general rule, that expropriation carries with it the requirement that compensation be paid prior to the 'taking'." [5] Arthur B. Hammond, Expropriation in Louisiana, preceding Title 19, Expropriation, West's LSA Revised Statutes.

 We think it feasible to first discuss the extent of the right of expropriation in Louisiana, the procedure in connection therewith, and the contemporary construction of the Constitution and the laws and statutes. In this connection, we must observe that, "Expropriation, or eminent domain as it is called in the common law, is the power of the sovereign to take property for public use without the owner's consent. Nichol's Law of Eminent Domain, sec. 1.11, v. 1, p. 2 (3d ed. 1950). This power is inherent in all government, coming into being *co instante* with the establishment of the government and continuing as long as the government endures, and does not require recognition by constitutional provision for its existence. Ibid., sec. 1.14, pp. 13–14. It is undisputed that the sovereign may delegate the power of expropriation or eminent domain to administrative officers or other agencies of the sovereign and to public and private corpo-

---

5. In the very early case of Shreveport & A. Ry. Co. v. Hollingsworth, 42 La.Ann. 749, 7 So. 693, 694, the following pertinent statement was made:— " * * * From the days of Rome, when land-owners could prevent the construction of aqueducts to supply the city with water, and otherwise resist the divestiture of their property, to our times, the right of power and expropriation has undergone such radical changes, required by public exigencies, for the greater good of the people, that the owner may be dispossessed of the ownership; but with the condition of equitable indemnity previously made, not only for the value of the property, but also, when the contingency arises, for the damage which may consequently be sustained by him. * * * In such cases the owner is assimilated to a debtor to society, in certain emergencies, as in ordinary matters a debtor is to his creditor; the use of his property, and in the one case, for public utility, being subjected in satisfaction of it, as in the other it is made liable to the payment of an indiviual claim by the arm of the law."

rations. Ibid., sec. 3.1, pp. 188–189; see R.S. 19:2." State, through Dept. of Highways v. Ouachita Parish School Board, 242 La. 682, 138 So.2d 109.

LSA–R.S. 19:2 sets forth as follows—partially, at least—the agencies, entities, and purposes in regard to which the power of expropriation exists:

"Expropriation by state or certain corporations

Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:

(1) The state or its political corporations or subdivisions created for the purpose of exercising any state governmental powers;

(2) Any domestic corporation created for educational or charitable purposes;

(3) Any domestic or foreign corporation created for the construction of railroads, toll roads, or navigation canals;

(4) Any domestic corporation created for the construction and operation of street railways, urban railways, or inter-urban railways;

(5) Any domestic or foreign corporation created for the construction, maintenance, and equipment of any exposition having the endorsement of the federal government;

(6) Any domestic or foreign corporation created for the construction or operation of waterworks, filtration and treating plants, or sewerage plants to supply the public with water and sewerage;

(7) Any domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas;

(8) Any domestic or foreign corporation created for the purpose of transmitting intelligence by magnetic telegraph;

(9) Any domestic or foreign corporation created for the purpose of developing and transmitting electricity for power, lighting, heating, or other such uses. The buildings, transmission lines, stations, and sub-stations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire-using companies or, more than is necessary, with the convenience of the land-owner."

We are concerned herein with a corporation, affected with a public interest, of the type mentioned in Paragraph (7) above. Other entities, all extremely im-

portant to the public and to the public welfare, are granted the power of expropriation in LSA–R.S. 19:2, supra. For instance, under Paragraph (1) are included, not only the multiple functions of the state government, but also parishes, municipalities, drainage districts, levee districts, school districts, hospital districts, garbage districts, waterworks districts and any number of others, too numerous to enumerate fully. The others mentioned in succeeding paragraphs are domestic corporations created for educational or charitable purposes; corporations created for the construction of railroads, toll roads or navigation canals; street, urban or inter-urban railway corporations; corporations constructing or operating waterworks, filtration and treating plants, or sewerage plants; telegraph corporations; and power, lighting and heating corporations.

All of the above enumerated corporations will be vitally affected by the nature of this Court's decision. It cannot be gainsaid that an affirmation of our original decision will make it difficult and expensive for such corporations to carry out the duties imposed upon them. Also, it cannot be gainsaid that an affirmation of our original decision will have the effect of ultimately impeding modern day progress and expansion.

LSA–R.S. 19:2 was enacted as a part of the Revised Statutes of 1950, twenty-nine years after the adoption of the Louisiana

Constitution of 1921. Its history and its source are set forth in a footnote following its recitation; the earliest source stated is Section 1479 of the Revised Statutes of 1870. The footnote also states that, "The 1906 amendment [Act 208 of 1906] amended the section, as amended, to include a corporation organized under Louisiana law, constituted for the purpose of 'piping and marketing' natural gas, or 'supplying the public' with natural gas."

The Constitution of 1879, Article 155, in part, provided, " * * * nor vested rights to be divested, unless for purposes of public utility and for adequate compensation previously made." Article 156 of the Constitution of 1879 further provided that, "Private property shall not be taken nor damaged, for public purposes without just and adequate compensation being first paid." These provisions were included in the Constitutions of 1898 and 1913, Articles 166 and 167, and are now found in Section 2 of Article I and Section 15 of Article IV, supra, of the Constitution of 1921.

At the time of the adoption of the Constitution of 1879, our Civil Code of 1870 had been in existence for nine years. This Code, revised shortly after the adoption of the Constitution of 1868, was based upon a philosophy almost identical to that of the redactors of the French law; as amended, it is still a part of our law. It contains Chapter 11 of Title VII, Book III, relating to the compulsory transfer of property.

West's LSA–C.C., Article 2626 states the reason therefor and reads as follows:— "The first law of society being that the general interest shall be preferred to that of individuals, every individual who possesses under the protection of the laws, any particular property, is tacitly subjected to the obligation of yielding it to the community, wherever it becomes necessary for the general use."

"If the owner of a thing necessary for the general use, refuses to yield it, or demands an exhorbitant price, he may be divested of the property by the authority of law." West's LSA–C.C., Art. 2627.

"In all cases, a fair price should be given to the owner for the thing of which he is dispossessed." West's LSA–C.C., Art. 2628.

Article 2629 of the Revised Civil Code (same as Art. 2629 of Proposed Revision of 1869) provides that, "This price *ought* to be paid to the owner before the expropriation, that is to say, before he has delivered the possession, or it has been finally taken from him, in case of resistance." [6] (Emphasis ours.) (There is nothing providing that the owner *must* be paid before he has delivered the possession, or it is finally taken from him, in case of resistance.)

Under Article 2630, certain types of corporations, such as those constructing railroads, roads, canals and telegraph lines, were given the right to exercise the power of expropriation as far back as 1870.

Until 1948, a jury of freeholders determined, after hearing the parties and their evidence, what was the value of the land described in the petition with its improvements, and what damages, if any, the owner would sustain, in addition to the loss of the land, by its expropriation. Art. 2632, West's LSA–C.C. Legislative enactments provided for the number of jurors. With the advent of our highway system and the other entities hereinabove enumerated, trial by jury became too cumbersome and expropriation cases became triable by a judge alone. Section 2 of Act No. 325 of 1948 abolished juries in expropriation cases, stating that each expropriation case shall be tried before the court without a jury. LSA–R.S. 19:4 embodies the same pronouncement.

Prior to 1960, Articles 2634 and 2636 of the Revised Civil Code provided:

"Any appeal to the Supreme Court from the verdict of the jury and judgment of the lower court, made by either party, shall not suspend the execution of such judgment, but the payment of the amount of the verdict by the com-

---

6. Art 2607 of the Code of 1825 recited: —"This price ought to be paid to him before the expropriation, that is to say, before he has delivered the possession, or it has been finally taken from him, in case of resistance."

pany to the owner, or the deposit thereof subject to the owner's order, in the hands of the sheriff, shall entitle the corporation to the right, title and estate of the owner in and to the land described in the petition in the same manner as a voluntary conveyance would do. But in the event of any change being made by the final decree in the decision of the cause, the corporation shall be bound to pay the additional assessment, or be entitled to recover back the surplus paid, as the case may be." West's LSA–C.C., Art. 2634.[7]

"If any owner shall be of opinion that the quantity of land sought to be purchased by any corporation exceeds that which is reasonably necessary for the purpose intended by the company, it shall be lawful for him to file a special plea setting forth this fact, and in such case the jury shall determine not only the value of the land to be expropriated, but also the extent of land over which the company may exercise the forced expropriation; the whole always subject to the decision of the Supreme Court on appeal." West's LSA–C.C., Art. 2636.

In 1915, this Court had before it for consideration the case of Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93. Plaintiff alleged that it was a railroad corporation organized under the laws of Louisiana and as such was vested with the right to expropriate property for the location and operation of its line of railroad, and that it had selected a line through the Parish of Jefferson and across defendant's property. Defendant contended that the line selected by plaintiff was along and over the public highway of the Parish of Jefferson, and that the highway could not be used by plaintiff without a franchise from the police jury of the parish, which franchise the law allowed to be granted only by means of an adjudication to the highest bidder at public auction; it further contended that until plaintiff obtained a franchise it was without right to expropriate private property for the prolongation of the projected line or for the filling out of gaps in it. There was a jury verdict in favor of plaintiff, and the trial court refused to grant defendant a suspensive appeal. This Court issued a mandamus to the trial court, ordering it to grant a suspensive appeal. It considered Article 2634, supra, in connection with Articles 2631 and 2632, and concluded that it was never intended to provide that in a case where the plaintiff *has not the right to expropriate property* the defendant should be divested of his estate and the plaintiff become vested with it as if by private sale. In conclusion, however, this

---

**7.** The Code of 1825, Art. 2610, provided, "The verdict of the jury, and the judgment which shall be founded on it, are conclusive, except on appeal."

Court stated, "And so, as to said article 2634, it has application only where the question is, not as to whether there shall be an expropriation, but as to what, conceding that there must be an expropriation, shall be the location and amount of the land taken and the amount of the price and damages to be paid."

In 1952, this Court considered the case of Tennessee Gas Transmission Co. v. Wyatt Lumber Co., Inc., 221 La. 886, 60 So.2d 713, wherein questions similar to those raised in the Metairie Ridge Nursery case were posed. Article 2634, supra, was considered in connection with LSA–R.S. 19:13, which then provided, "Appeals from the judgment of the lower court, made by either party, do not suspend the execution of that judgment. The payment of the amount adjudged to the owner, or the deposit thereof in the registry of the court, entitles the corporation to the property described in the petition in the same manner as would a voluntary conveyance. If any change is made by the final decree, the person expropriating shall pay the additional assessment or recover back the surplus paid." We conclude that, "It is apparent from the holding in the Metairie Ridge Nursery case that the defendant is entitled to a suspensive appeal in this case because the provisions of LSA–Revised Statutes 19:13 has made no material change in the law as was announced in Article 2634 of the Revised Civil Code."

In 1953, we considered a motion to dismiss a suspensive appeal in an expropriation case, Interstate Oil Pipe Line Co. v. Cowley, 223 La. 672, 66 So.2d 588, in which mover relied on LSA–R.S. 19:13. We stated that the record showed that the defendant not only raised the question of the right of the plaintiff to expropriate his property, but also contested the area of land demanded by the plaintiff. In this Court, by way of exception of no cause or right of action, defendant contested the constitutionality of LSA–R.S. 45:254 (granting to "common carrier pipe lines" the right to expropriate under state expropriation laws) on the ground that the provisions of that law infringed on guarantees of Article I, Section 2, of the Louisiana Constitution of 1921. Relying on the Wyatt case, supra, we denied the motion to dismiss the suspensive appeal. See, State of Louisiana, Through the Dept. of Highways v. Central Realty Investment Co., Inc., 226 La. 1085, 78 So.2d 182; Louisiana Power & Light Company v. De Bouchel, La.App., 117 So.2d 94; State, Through Dept. of Highways v. Central Realty Investment Company, Inc., 238 La. 965, 117 So.2d 261.

In the lifetime of everyone now living, we have seen from the stream of history that many of our present public and private rights and obligations are the product of the growth of civilization. In the daily life of the individual today, he is thrown in contact with—to name only a few—natural

gas, the automobile, airplane, telephone, telegraph, radio, television, paved roads, transportation facilities, industrial and educational institutions, all of which have been greatly improved, enlarged, and accelerated, carrying with them public interest and providing individual as well as public rights and obligations.[8]

LSA–R.S. 19:13, supra, was amended by Act 108 of 1960, and as amended expressed the legislative intent to eliminate completely suspensive appeals in expropriation matters. The same Legislature, by Acts 92 and 93, amended Articles 2634 and 2636 of the Civil Code (See, La.L.Rev., Vol. XXI, p. 62) to recite:

> "No party to any expropriation proceeding shall be entitled to or granted a suspensive appeal from any order, judgment, or decree rendered in such proceeding, whether such order, judgment, or decree is on the merits, exceptions, or special pleas and defenses, or any or all of them. The whole of the judgment, however, shall be subject to the decision of the appellate court on review under a devolutive appeal.

> "When a devolutive appeal is taken by either party, payment to the owner of the amount awarded by the trial court, or the deposit thereof in the registry of the court, entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance. If any change in the amount awarded is made on such appeal, the plaintiff shall pay the additional assessment or recover the surplus paid." West's LSA–C.C., Art. 2634.

> "If any owner shall be of opinion that the quantity of land sought to be purchased by any corporation exceeds that which is reasonably necessary for the purpose intended by the company, it shall be lawful for him to file a special plea, setting forth this fact, and in such case the court shall determine not only the value of the land to be expropriated, but also the extent of land over which the company may exercise the forced expropriation; the whole always subject to the decision of the court on appeal, which appeal, however, as provided by Article 2634, shall not suspend the execution of the judgment of the lower court." West's LSA–C.C., Art. 2636.

Our research does not disclose that the constitutional contention raised in the Cowley case, supra, has ever been decided

---

8. With certain Federal and State Highway appropriations and the necessity for expediency as a result thereof so that roads could be quickly completed, it became necessary to further amend the laws. The "Quick Taking" statute was enacted in 1954 by the Louisiana Legislature. See, LSA–R.S. 48:441 et seq.

by this Court or any inferior court. As stated supra, in the Metairie and Wyatt cases, supra, arguments were not made with respect to the constitutionality of LSA–R.S. 19:13 and Articles 2634 and 2636 of the Code. The law was not considered sufficiently expressive at that time to justify the refusal of a suspensive appeal when the question of the right to expropriate was raised.

The Legislature of 1960, supra, virtually overruled the rule set forth in the Metairie, Wyatt, and Cowley cases, supra. Now, after notice and hearing in the trial court and depositing the amount awarded by said court in the Registry of Court (which actions satisfy "Due Process"), the expropriating authority is entitled to take possession of the expropriated property.

In considering the statutory law and the articles of the Code in connection with the provisions of the Constitutions of 1879, 1898, 1913 and 1921, it leaps to the mind that had the redactors of those Constitutions thought that the property owner should be entitled to a suspensive appeal in order to determine just and adequate compensation and the issue of public purpose before the expropriating authority could take possession, they would have so stated. Likewise, their successors would have initiated amendments, if they had thought they were needed.

▃▃▃▃▃▃

We must now proceed to a consideration of the authorities on contemporaneous construction in connection with the question herein involved.

▃▃▃▃ "A rule of statutory construction, the soundness of which is attested by long use, and the frequent and continuing approbation of judicial tribunals, is that the intent of the law-maker is to be ascertained by inquiring what was his motive in legislating—what was the mischief sought to be avoided or remedied, and what the object or good to be attained. Contemporaneous history may be resorted to, and the discussions attendant upon the progress of the legislation through its various stages, as well as the *projet* of the law, in order to discover the meaning and scope of the law itself. Subsequent legislation also upon the same subject, or upon cognate matters, is useful as furnishing an interpretation of previous words, and in fixing their import." State ex rel. New Orleans Pacific Railway Co. v. Nicholls (1878), 30 La.Ann. 980, 982–983.

▃▃▃▃ " * * * laws, like contracts, are to be construed in the light of conditions as they exist at the time of their passage. * * * " Union Sulphur Co. v. Parish of Calcasieu, 153 La. 857, 96 So. 787. Cf. Item Co. v. Na-

tional Dyers & Cleaners, 15 La.App. 108, 130 So. 879; Union Producing Company v. Martin, 236 La. 1057, 110 So.2d 99.

■ "It has been well said that 'the court will resort in the interpretation of statutes to the common knowledge of the public at large on conditions which led to its adoption.'" State v. Maloney, 115 La. 498, 39 So. 539.

■ "The safest rule of interpretation is to look to the nature and object of the particular powers, duties and rights with all the lights and aid of contemporaneous history, and to give to the words such operation and force consistent with their legitimate purposes as may fairly secure and attain the ends proposed." State v. Roberson, 225 La. 74, 72 So.2d 265. Cf. State ex rel. Priest v. Coverdale, 204 La. 448, 15 So.2d 849; State v. Marsh, 233 La. 388, 96 So.2d 643; State v. Arkansas Louisiana Gas Company, 227 La. 179, 78 So.2d 825.

In Landry v. Klopman, 13 La.Ann. 345, Chief Justice Merrick stated very clearly the approach to be used by the Court in considering a problem as presented here when he wrote:

"In the determination of constitutional questions the same rules of interpretation may be resorted to as with other laws. The duty imposed upon the judiciary to discover the spirit and intention of the law giver of the true meaning of the instrument is not less imperative than in case of statutes. It is only a labor of greater delicacy, because the rights of sovereignty are brought in conflict and of more grave importance, because the principles involved underlie our social structure, are fundamental and affect more extensive interests. But an adherence to the letter and a violation of the spirit of the instrument ought not to be tolerated or supposed possible."

■ Until final determination by an appellate court by means of a devolutive appeal, the expropriating authority's title is inchoate—that is, partial, temporary, unfinished, provisional, begun but not completed. Cf. Wells v. Joseph, La.App., 95 So.2d 843; Corkran Oil & Development Co. v. Arnaudet, 111 La. 563, 35 So. 747; 16 C.J.S. Constitutional Law, Vested Rights, VII, § 215, p. 1173 et seq.; 42 C.J.S. Inchoate p. 519. The appellate court reviews all errors alleged to the judgment of the trial court; such matters include the right to expropriate. Therefore, title in the expropriating authority cannot be said to be vested, final, and absolute, until the expropriation has been affirmed on appeal. If the appellate court should determine that the expropriating authority had no right to expropriate, either in whole or in part, certainly the condemnee would be entitled

to a return of his property and any damages suffered; in such instance, the expropriating authority would have to vacate the property. If the amount awarded by the trial court were increased, the expropriating authority would have to pay the additional amount. If the expropriating authority were insolvent and could not pay any excess granted by the appellate court, the condemnee would not be without remedy; he could ask for a return of his property. It follows that an expropriating authority, which has an inchoate title and has deposited in the Registry of Court for the benefit of the defendant the amount awarded by the trial court (LSA–R.S. 19:9, West's LSA–C.C., Art. 2628), has met the requirements of the Constitution.

Attached to the brief of Tennessee Gas Transmission Company is Appendix "A", a résumé of the provisions of various State Constitutions, statutes, and authorities of every other state in the United States which pertain to the taking of private property for public purposes.

We find that the provisions of the constitutions and statutes of South Carolina, Kentucky, New Jersey, and Georgia are almost identical with the provisions of Article I, Section 2, of the Louisiana Constitution of 1921 and our laws pertaining to Eminent Domain.[9] However, they contain more verbiage than ours.

The provisions of the constitutions of the other states enumerated in said Appendix are somewhat similar to ours.

Suffice it to say that in no state of this Union do we find that a landowner is allowed a suspensive appeal and the expropriating authority prohibited from entry on or possession of the expropriated property pending such appeal to the appellate courts in cases in which the power of *Eminent Domain* is being exercised in the interest of a public purpose or good.

9. South Carolina:—Art. I, Sec. 17, and Art. IX, Sec. 20, So. Carolina Const.; See, Atkinson v. Carolina Power & Light Co., 239 S.C. 150, 121 S.E.2d 743; City of Spartanburg v. Belk's Dept. Store, 199 S.C. 458, 20 S.E.2d 157, 167; Cf. Smith v. City of Greenville, 229 S.C. 252, 92 S.E.2d 639; South Carolina State High. Dept. v. Miller, 237 S.C. 386, 117 S.E.2d 561; South Carolina State High. Dept. v. Southern Ry. Co., 239 S.C. 1, 121 S.E.2d 236; Hinson v. A. T. Sistare Const. Co., 236 S.C. 125, 113 S.E.2d 341.

 Kentucky:—Sec. 13, Ky. Bill of Rights; Sec. 242, Ky.Const.; See, Ky.R.S., Sec. 416.230 et seq. especially 416.280(3);

 Cf. 55 A.L.R., p. 201; Barker v. Lannert, 310 Ky. 843, 222 S.W.2d 659, 310 Ky. 843; Commonwealth of Ky. Dept. of Highways v. Fister, Ky., 376 S.W.2d 543.

 New Jersey:—Art. I, Sec. 20, and Art. IV, Sec. 6(3), N.J.Const.; Texas Pipe Line Co. v. Snelbaker, 30 N.J.Super. 171, 103 A.2d 634; N.J. Statutes Annotated 48:10–1, 20:1–12, 20:1–16, 20:1–26; See, State, by and through Adams v. New Jersey Zinc Co., 40 N.J. 560, 193 A.2d 244.

 Georgia:—Sec. 2–301, Ga.Const. art. 1, § 3, par. 1; Cf. Woodside v. City of Atlanta, 214 Ga. 75, 103 S.E.2d 108; Johnson v. Fulton County, 103 Ga.App. 873, 121 S.E.2d 54.

Counsel for the defendant has called our attention to the case of Kessler v. Thompson, 75 N.W.2d 172, wherein the Supreme Court of North Dakota held unconstitutional a statute permitting the condemning authority to take possession of the expropriated property prior to appeal in the district court. Counsel urges that the Constitution of North Dakota is similar to our Constitution, in that it provides, " * * * nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." We do not think that the case is apposite, because "[i]n that case we were discussing a taking by the commissioner of state highways, an administrative agency of the state, under a procedure which purported to permit the commissioner to take the property pending an appeal from an award made by the board of county commissioners to the district court, not an appeal from the district court as is the case here." State ex rel. Northern States Power Co. v. Teigen, N.D., 80 N.W.2d 110.

The Fifth Amendment to the United States Constitution provides in part that, " * * * nor shall private property be taken for public use, without just compensation." In the case of The Cherokee Nation v. Southern Kansas Railway Company, 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295, (Oct. Term, 1889) the United States Supreme Court held that an Act of Congress granting a right of way through Indian Territory to the Southern Kansas Railroad did not violate the provision of the constitutional amendment supra; it stated:

"It is further suggested that the act of congress violates the constitution in that it does not provide for compensation to be made to the plaintiff before the defendant entered upon these lands for the purpose of constructing its road over them. This objection to the act cannot be sustained. The constitution declares that private property shall not be taken 'for public use without just compensation.' It does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken; but the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed. Whether a particular provision be sufficient to secure the compensation to which, under the constitution, he is entitled, is sometimes a question of difficulty. In the present case the requirements of the constitution have, in our judgment, been fully met. The third section provides that, before the railway shall be constructed through any lands proposed to be taken, full compensation shall be made to the owner for all property to be taken or damage done by reason of the construction of the road. In the event of an appeal from the finding of the

referees, the company is required to pay into court double the amount of the award, to abide its judgment; and, that being done, the company may enter upon the property sought to be condemned, and proceed with the construction of its road. We are of the opinion that this provision is sufficiently reasonable, certain, and adequate to secure the just compensation to which the owner is entitled.

"The plaintiff asks what will be its condition as to compensation if, upon the trial *de novo* of the question of damages the amount assessed in its favor should exceed the sum which may be paid into court by the defendant. This question would be more embarrassing than it is if, by the terms of the act of congress, the title to the property appropriated passed from the owner to the defendant, when the latter, having made the required deposit in court, is authorized to enter upon the land pending the appeal, and to proceed in the construction of its road. But clearly the title does not pass until compensation is actually made to the owner. Within the meaning of the constitution the property, although entered upon pending the appeal, is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes from the owner. * * * In the case now

before us the property in respect to which the referees made the award will be conditionally appropriated for the public use when the defendant makes a deposit in court of double the amount of such award, and it only remains to fix the just compensation to be made to the owner. But the title has not passed, and will not pass, until the plaintiff receives the compensation ultimately fixed by the trial *de novo* provided for in the statute. So that, if the result of that trial should be a judgment in its favor in excess of the amount paid into court, the defendant must pay off the judgment before it can acquire the title to the property entered upon, and, failing to pay it within a reasonable time after the compensation is finally determined, it will become a trespasser, and liable to be proceeded against as such; and, in such case, if the plaintiff shall sustain damages by reason of the use of its property by the defendant pending the appeal, the latter will be liable therefor. The apprehension, therefore, that the plaintiff may lose its property without receiving just compensation therefor is without foundation.

"Some stress is laid upon the possibility that the defendant may become insolvent before the proceeding below reach a conclusion, and become unable to pay any damages in excess of the

amount it may pay into court. The possibility of such insolvency is not, in our opinion, a sufficient ground for holding that the provision made in the act of congress for securing just compensation is inadequate. Absolute certainty in such matters is impracticable, and therefore cannot reasonably be required. * * *"

In 1942, the Supreme Court of South Carolina, in City of Spartanburg v. Belk's Department Store, 199 S.C. 458, 20 S.E.2d 157, affirmed the following observation of a lower court:—

" 'It is clear that the framers of our Constitution never intended that the taking of private property for public use must be delayed until the matter of the exact amount of compensation should be finally determined and the compensation actually paid to the owner. * * *' "

 It is a matter of common knowledge that natural gas is one of the major products of Louisiana, consumed in large volumes by the public and by industry; it is a major source of revenue not only to the State of Louisiana, but also to the thousands of royalty owners throughout the State.

To hold LSA–R.S. 19:13, as amended, and Articles 2634 and 2636 of the Revised

Civil Code, as amended, unconstitutional, grant defendant a suspensive appeal, and prevent plaintiff from entering upon defendant's property under the circumstances of this case would not only be against the great weight of authority, but would also be against public policy.

 We conclude that LSA–R.S. 19:13, as amended by Act 108 of 1960, and Articles 2634 and 2636 of the Revised Civil Code, as amended by Acts 92 and 93 of 1960, are constitutional and not violative of that part of Section 2 of Article I of the Louisiana Constitution providing that " * * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid", and that part of Section 15 of Article IV of the Louisiana Constitution providing " * * * nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." As shown supra, the Constitution of Louisiana neither grants nor guarantees the right to a suspensive appeal in expropriation matters. The State Legislature is free to enact any legislation that is neither prohibited by the State Constitution nor the Federal Constitution. We find that LSA–R.S. 19:13, as amended, and Articles 2634 and 2636, as amended, are not so prohibited.[10]

10. The constitutionality of a statute is presumed, and courts must uphold a law unless it clearly violates the Constitution.

State v. Guidry, 247 La. 631, 173 So.2d 192; Ricks v. Department of State Civil Service, 200 La.341, 8 So.2d 49.

We also conclude that the case of State, Through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144, is not apposite to the instant case. That case held that the Sabine River Authority, created by constitutional amendment of 1960 by the addition of Section 45 to Article XIV of the Louisiana Constitution, was empowered to acquire land by expropriation under the general law, and that LSA–R.S. 19:141–19:160, insofar as they provided that the Authority could acquire property by a "Declaration of Taking" or "Quick Taking", were unconstitutional, being violative of Article I, Sections 2 and 6, and Article IV, Section 15, of the Louisiana Constitution. The Court further held that LSA–R.S. 19:141–19:160 transcended the scope of the Authority's constitutional limitations.

For the reasons assigned, our original decree having been set aside by the granting of a rehearing, the writs herein issued are recalled and set aside; the following ruling of the Court of Appeal, Fourth Circuit, "Writs refused. The application is denied. There is no constitutional guarantee of a suspensive appeal, and the act of the legislature in limiting appeals in expropriation cases to devolutive appeals is not unconstitutional", by which defendant was denied a suspensive appeal, is affirmed. All costs to be paid by defendant.

McCALEB, J., dissents, adhering to the views expressed in our original opinion.

SUMMERS, Justice (dissenting).

A vital issue is presented by this case and compels this dissent. As important as the rights of this defendant may be, the more significant aspect of this decision is the effect of the court's disregard of the plain language of the constitution. This decision goes to the very heart of the stability of constitutional government. It represents a repudiation by judicial decree of the fundamental law upon which the structure of our government is founded! If this can be accomplished in this instance —it can and will occur again.

The constitution is plain. It provides that "private property shall not be *taken* or damaged except for public purposes and *after just and adequate compensation is paid.*" La.Const. art. 1, § 2. (Emphasis added.)

The contested legislative act, however, entitles the plaintiff to the property it seeks "in the same manner as would a voluntary conveyance"[1] after judgment in the trial court and before there is a determination on appeal of the adequacy of the compensation.

What is clear to me is that there can be no taking of property until there is a determination of just and adequate com-

---

1. La.Civil Code art. 2634.

pensation; and this determination is really no determination at all until the judgment on that question is final; and that judgment is not final until the question is adjudicated by the court of last resort.

To permit the plaintiff to take possession and control of defendant's property prior to that time, therefore, constitutes a disregard of the constitutional mandate pure and simple.

This decision points out the regrettable tendency of constitutional amendment and revision by the judiciary. It discards the cherished notion that government derives its just power from the consent of the governed. Expediency, upon which the court founds its judgment, is too costly when constitutional principles are the price that must be paid.

I adhere to the reasons assigned in our original opinion.

FOURNET, Chief Justice (dissenting).

While I fully recognize that the constitution of the United States and those of the several states prohibit the taking of private property except for public use or utility without just compensation, the Louisiana constitution, unlike these, specifically prohibits such taking unless and until just and adequate compensation is *previously* paid.

Consequently, the decisions of the several states, as well as those of the federal courts, allowing a condemnor under certain conditions to go into possession of the property pending an appeal by the condemnee from judgment authorizing the taking and fixing of the amount to be paid, as, for example, when the amount adjudged to be a fair value for the property is deposited with the court, or when a bond for such amount is furnished, can have no application in this state, for they were decided under the specific constitutional and/or statutory provisions of these respective jurisdictions. The error in the majority decision lies in its reliance on these authorities, in total disregard of the specific contrary provisions of our own constitution.

The decision of the United States Supreme Court in The Cherokee Nation v. Southern Kansas Railway Company, 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295, cited and quoted from at length in the majority to support its holding, lucidly explains and expounds on the logic underlying the decisions in the other state and federal courts, and, I think, clearly exposes the reason why no reliance can be placed on such holdings to sustain the instant decision, for the United States Supreme Court there points out that "The Constitution declares that private property shall not be taken 'for public use without just compensation.' *It does not provide or require that compensation shall be actually paid in advance of the occupancy of the land*

*to be taken.* * * * In the event of an appeal from the finding of the referees, the company (condemnor) is required to pay into court double the amount of the award, to abide its judgment; and, that being done, *the company may enter upon the property sought to be condemned,* and proceed with the construction of its road." It is obvious, therefore, that title does not vest in the condemnor under these statutory and constitutional provisions until the matter has been finally determined and the amount paid. (The emphasis and word in brackets are supplied.)

The United States Supreme Court, in the Cherokee case, considering the question of the status of the property if, upon trial, the amount assessed against the condemnor exceeded the amount paid into court, stated: "This question would be more embarrassing than it is *if,* by the terms of the act of Congress, *the title to the property* appropriated *passed from the owner to the defendant* * * *. But, clearly the title does not pass until compensation is actually made to the owner. * * * if the * * judgment in its favor (be) in excess of the amount paid into the court, *the defendant must pay off the judgment before it can acquire the title to the property entered upon,* and, failing to pay it within a reasonable time after the compensation is finally determined, it will become a trespasser,

and liable to be proceeded against as such." (The emphasis and word in brackets are supplied.)

Contrary to the holding of the majority that under R.S. 19:13 and Articles 2634 and 2636 of the Revised Civil Code, as amended by the legislature in 1960, the condemnor's title in this state is *"inchoate"* until final determination in the appellate court, R.S. 19:-13, set out in full in the first footnote in the majority opinion, provides a suspensive appeal is unavailable to any party to an expropriation proceeding, and that when a devolutive appeal is resorted to "payment to the owner of the amount awarded by the trial court, or the deposit thereof in the registry of the court, *entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance,"* the condemnor only being required to pay additional assessment or recover back surplus paid in the event the award is varied in the appellate court. (The emphasis has been supplied.)

It is thus obvious that the Congressional statute and those of the several states allow the condemnor to only *take possession* of the condemned property pending appeal while our statute *vests title to the property* sought to be condemned in the same manner as if it had been voluntarily conveyed by deed executed by the owner once the condemnee is paid the amount awarded, or this amount is merely deposited in the

court's registry pending final determination of the case on appeal.

It is clear, therefore, that Acts Nos. 92 and 93 of 1960, amending Articles 2634 and 2636, respectively, of the Revised Civil Code, by denying condemnor a suspensive appeal and authorizing the taking of plaintiff's property without adequate compensation having been *previously* paid are unconstitutional, being in direct contravention of the constitutional provisions on this subject, which are to the effect that *"private property shall not be taken* or damaged *except* for public purposes and *after just and adequate compensation is paid"* (Section 2 of Article I), nor shall "vested rights be divested, unless for purposes of public utility *and for* just and adequate *compensation previously paid."* Section 15 of Article IV. (The emphasis has been supplied.)